## SCHEETZ *v.* FITZWATER.

A sheriff's sale of A., with its appurtenances, passes the title of the tenant of A. in B., which he held by adverse possession for a period short of twenty-one years, and used in connection with A. as one farm; B. having formerly been the site of a mill-pond appurtenant to a mill on A., but that right having ceased, under the provisions of the grant, by disuser.

E. conveyed to L. a mill-dam, or pond of water, with the site or soil of said pond, for the use and service of a mill, (on the land of L.,) and for no other use whatever. In 1817, L.'s assignee drained the pond and cultivated the reclaimed land, with the tract on which the mill stood, as one farm. In 1833 his title to the mill tract, with its *appurtenances*, was sold by the sheriff: *Held*, L.'s title to the soil of the mill-pond was a base fee, determinable on disuser as a pond, when it revested in the assigns of E., under a conveyance of the *reversion*. Until a notorious user for a different purpose than was limited in the deed, L. and his assigns had no *possession adverse* to E. and his assigns. That the possession of L.'s assignee, after the disuser as a mill-pond, passed, by force of the word *appurtenant*, with the mill tract to the sheriff's vendee, and he could tack his subsequent adverse possession to that of the defendant in the execution, to make up the time required as a bar by the statute.

IN error from the Common Pleas of Montgomery county.

*March* 29, 30. This was an action of trespass by the plaintiff in error, in which the title to the *locus in quo* was the question. The plaintiff claimed title by a deed in 1746, from Emlen to Lardner, conveying " *a certain* mill-dam or pond of water, and mill-race or stream of water, issuing and proceeding from the said mill-dam or pond of water, as the same is now situate, and being in and upon

a certain tract or parcel of land situate in the manor of Springfield, together also with the site and soil of the said mill-pond or dam and race of water, and also one perch of land on each and every side of the said pond, or dam and race of water, to and for the use and service of a certain mill, with the land thereto belonging, and for no other use whatsoever. The said perch of land to be taken and laid out from the centre or middle of the said mill-race, and from the edge of the water round or on the outside of the said pond, if his, the said George Emlen's land shall extend one perch beyond the said dam or pond, or otherwise, so far as the said George Emlen's land doth extend beyond the said pond, not exceeding one perch; *And also,* full and free liberty and privilege to and for the said Lynford Lardner, his heirs and assigns, of egress and regress to and from the said mill-pond and race, to repair, support, and maintain the same for the use and service of the said mill. [The liberty and privilege of making bridges, and hedges or fences across the said mill-race, and of passing and repassing over and along the same to and from the adjacent land of the said George Emlen, so as such bridges, hedges or fences, do not obstruct, hinder, or prejudice the same race or pond of water, or either of them, excepted and hereby reserved to the said George Emlen, his heirs and assigns.]"

On the same day, and for the same consideration, Lardner conveyed to Emlen five acres of land, "excepting and always reserving unto the said Lynford Lardner, his heirs and assigns, out of this present grant and release, a certain mill-race or stream of water running across the hereby granted land to and for the use and service of his the said Lynford Lardner's paper-mill, and also the site and soil of the said mill-race or stream, together with one perch of land along and on each side of the said mill-race or stream of water with full and free liberty and privilege to and for the said George Emlen, his heirs and assigns, to make one or more bridge or bridges over the said hereby excepted mill-race, so as not to prejudice, obstruct, dam up, or divert the same race or stream of water."

Lardner's title to the mill, "together with the mill-dam, mill-race, and pond of water, and the site, soil, and privileges," became vested in Scheetz, the elder, who devised to Justus Scheetz. The site of the mill-pond, in which the trespass was committed, is now in *Dublin* township. In 1834, the sheriff, under a judgment and execution against Justus Scheetz, levied on and sold to the present plaintiff the mill and tract of land, containing ninety-four acres in *Springfield* township, with the *appurtenances*. The plaintiff gave

evidence that a tenant of Emlen's land, (now owned by defendant,) about forty years before this action, had put up and repaired the fence around the margin of the mill-pond, as it then stood. About 1817, Justus Scheetz dug a trench through the pond, which had become in part filled up, thereby draining a large portion of the former site. It was shortly after this that he commenced plough- ing and cultivating it, which was continued by the sheriff's vendee.

In 1812, the heirs of Emlen conveyed to Stackert the tract out of which the site of the mill-pond had been granted, " with the re- versions and remainders," &c., " excepting and always reserving, nevertheless, out of this present grant, all and every such parts and parcels of the lands and premises herein above described, and all the waters, mill-dam and mill-race, water-courses, rights of soil, lanes, passages, rights and privileges whatsoever, which any person or persons whatsoever, according to the original grant to George Emlen, the father of the said Caleb Emlen, deceased, or by any deed or writing under the hand and seal of the said George Emlen, (or of the said Caleb Emlen, if any,) are seised of or entitled thereto."

The action was brought in 1842, for taking grass from the site of the mill-pond, which had been drained and converted into meadow. There was conflicting evidence as to defendant's acts of ownership and possession, which was left to the jury under instructions by the court (KRAUSE, P. J.) on the following points of law arising thereon. As to Emlen's deed to Lardner, they said, " that it conveys land, and not merely an easement or incorporeal hereditament, by the words ' site and soil,' they being as strong to convey land, as the words ' debts, dues, and demands, real, personal, and mixed,' cou- pled with ' heirs and assigns,' are to convey the fee; and these latter words have been held, 12 Serg. & Rawle, 269, to convey a fee-sim- ple in land.  And the thing granted is not so vaguely described as to fall under the censure of Stambaugh v. Hollabaugh, 10 Serg. & Rawle, 357; but rather within the cases cited by Mr. Justice Duncan as good, viz.: ' a moiety of a yard of land lying in a great waste—' and ' twenty acres, parcel of the grantor's land—' But Emlen did not convey a fee-simple estate in that land.  He con- veyed a qualified fee, determinable on the abandonment by Lard- ner, his heirs or assigns, of the use and service for which the con- veyance was made, as stated in his deed.  And in conveying such limited fee, he retained the reversion in himself; and that he could permit to descend, or sell to others.  To convey such limited fee, and to retain the reversion, was his intention, as the court collects it

from his deed; and such intention of the grantor, when legal, is the governing principle in construing conveyances; 4 Dal. 347; 3 Watts & Serg. 303; 2 Binn. 537, 544. Lynford Lardner therefore acquired an estate in this pond and mill-race as land to be held by him, his heirs and assigns, so long, and no longer, as he or they continued to use them for the purpose stated; and necessarily they reverted to Emlen, or his heirs or assigns, as the case might be, whenever that purpose was abandoned; and the land was subjected to other uses."

And further: "That the right of way to support, repair, and maintain this dam and race is an appurtenance to them, the grant being entire, and inclusive of all for the same ' use and service;' and therefore, if the dam, and the site, and soil have been abandoned as a use and service of the mill described, all that is contained in the grant, reverted together, to Emlen, his heirs or assigns, from the date of such abandonment."

That if the clearing, &c., was commenced by Justus Scheetz in 1817, there the use and right, being diverted from the purposes of the original grant, reverted and became vested in Emlen or his assigns, and the present plaintiff did not acquire it as an *appurtenant* to the mill; and, unless it was included in the levy by the sheriff, it did not pass at all. That the recital in Emlen's deed to Lardner was notice, and the purchaser was bound by its restrictions. Therefore the plaintiff could not tack his adverse possession to that of Justus Scheetz, and if that commenced in 1817, that point was out of the case; since his possession was interrupted by the plaintiff, under the levy and sale, before it had been continued adversely for twenty-one years. As to Scheetz's possession prior to 1817, it was not hostile unless he had done some act, and shown a clear intention to abandon the right under the Emlen deed, and the limitation there prescribed; until then, he held under one title with Emlen, both together constituting one fee-simple, and Emlen having an interest which would sustain an action for a permanent injury to the freehold.

The errors assigned were, in the construction of Emlen's deed; in ruling that the sheriff's vendee did not purchase this tract, if the use for the mill was then abandoned, and it was not included in the levy; and as to the effect of the possession prior to the user for other purposes than those designated in the deed; and that Emlen's title was vested in the plaintiffs if there had been such an abandonment.

The cause was argued at December Term, 1845, by *G. R. Fox* and *Fox*, for plaintiffs in error, and *Freedley*, contrà.

V. V.—17

At this term it was again argued by *G. R. Fox* for plaintiff, and *Meredith*, for defendant.

For plaintiff it was said, that the conveyance of the water right and of the land were distinct; the former was for the use of other land, on which the mill stood, while the land was in no way connected therewith, but was absolutely granted. The estate was not conditional, *ea intentione* in a feoffment will not create a condition; 2 Tho. Co. p. 9; to do that the words must be clear; Cook *v.* Trimble, 9 Watts, 16. It was insensible and void, unless the distinction taken above was adopted, for in no way could this land, as land, be used for the purposes of a mill. It is against the policy of the law, for it is prohibiting cultivation, and compelling the grantee to retain it, as a bog for ever; all such restrictions are void conditions; Touch. 130, 132; 2 Tho. Co. 29; 4 Dane's Abr. 156; 2 Cruis. 8. If a condition, it is subsequent, and therefore to be construed strictly, as it divests an estate; Co. Litt. 205 b, 219 b, 220 a; 8 Rep. 91; 18 Ves. 56; 5 Vin. Abr. 145, pl. 27; 2 Tho. Co. p. 1, n. a. Such clauses, if doubtful, are construed as covenants; 4 Kent, 132. If a condition, it is not broken, for it is as much annexed to the land as to the mill. If broken, an entry is essential; 2 Tho. Co. 87, n., L. 2; 2 Bl. Com. 155; 4 Kent, 127; and that is confined to the grantor, and he must go there. [*Per Curiam.*—Would it not return as alluvium, had the water dried up, for here is no further grant than of the *pond ?*] The plaintiff, under the sheriff's deed, took all the land of the defendant, which he was using as appurtenant to the tract or farm levied on; 7 Serg. & Rawle, 177. Land may be said to be appurtenant to a house after user for a convenient time; 3 Salk. 40; and ten or twelve years is said to be a convenient time; 2 Vin. Abr. 599, pl. 42. *Appertaining* means, usually, occupied or used with it; Plowd. 169, 170; Hall *v.* Benner, 1 Penna. Rep. 407; 1 Tho. Co. 241.

For the defendant it was said, the rule that the words of the deed are to be taken most strongly against the grantor, is confined to deeds poll; Touch. 52, by Prest.; for in indentures, as here, they are the words of both parties. The plain design was an ownership for a particular purpose; it never could have been intended to give the right to use a small piece of land in the centre of the farm for any purpose the grantee might choose; thus destroying the value of the residue. A qualified or base fee leaves a reversion where

there is no limitation over, which may be granted. Touch. 132, shows what words make a condition; *ea intentione*, if to do a thing connected with the land do make a condition; if collateral, it may be otherwise. Here, too, there is no right of way for the purposes of the *land*, but simply to cleanse the race and pond; and the grantor reserved the right to exclude all others; 1 Cowp. 600. As to the re-entry, defendant was in possession claiming a right. Where the right to avoid for the breach is given to another than the heir, as a younger son, it is construed a use; 4 Leo. 2; Touch. 514; and instances of a similar *use* with the present are given, p. 517. So is a dedication for a street, a square, &c. The rule is now well settled, that the object is to discover the intention and enforce that; Wellington *v.* Wellington, 1 W. Bl. 645; Parkhurst *v.* Dormer, Willes, 332. [ROGERS, J.—If it be a base fee, an avoidance will be of the whole.] The doctrine of uses avoids that difficulty. [CH. J.—How can there be a *use* for a mill? BELL, J.—A use is always for the person.] As to the statute. There may be a tacking of two successive possessions in Pennsylvania, it is true, but there must be unity of title. Here there is no such unity. You are asked to put such a construction as will work a wrong.

If this land was held by a wrongful possession, contrary to the deed, clearly it cannot be appurtenant to the mill, because it was in that case held as *land ;* but if held under the deed, and it did pass as an appurtenant, then it was as a water right, and there has been no adverse possession, nor any right but that given by the original deed, which was an easement or privilege of flowing water.

*April* 12. GIBSON, C. J.—There is only one assignment of error in this record, which is sustained; and the other points are left to stand on the reasons of the judge, which seem to be satisfactory. He erred, however, in charging that the adverse possession of Justus Scheetz did not pass to the plaintiffs by the sheriff's deed. In Overfield *v.* Christie, 7 Serg. & Rawle, 177, in which the opinion of Judge Washington in Potts *v.* Gilbert, 3 Wash. C. C. R. 475, was overruled, it was settled that the adverse possession of an occupant without right might be transferred to a purchaser, and continued by him for the residue of the time necessary to form a bar by the statute of limitations, and this principle the judge did not controvert. His position—and it is one of which it is difficult to explain the fallacy—was that the *locus in quo*, having reverted, did not pass by the sheriff's deed, which conveyed no more than the tract to which it had ceased to be appurtenant; and consequently, that

it did not pass the adverse possession. But the possession may be passed without the title. The deed professed to pass the appurtenances belonging to the tract; and if the *locus* had not ceased to be occupied as an appurtenance, though the title to it were gone, the deed would pass the occupant's possession of it, as it would have passed the title to it had the occupant still held it. A proprietor who occupies his neighbour's land as a part of his farm, may certainly transfer his possession of the whole by a conveyance of the farm. Such is the principle of Overfield *v.* Christie, which is different from this case only in the immaterial respect, that there the conveyance was made by the occupant to the purchaser. But a sheriff's deed passes all that the debtor could convey, and is necessarily as operative in every respect. There was, however, evidence of entry to be left to the jury, as well as other considerations in the cause, which may yet, perhaps, avoid the statutory bar.

Judgment reversed, and *venire de novo* awarded.