## Cooke v. Doll

*E. B. Farr, James S. Fields,* and *R. W. Trembath,* for plaintiff.
*Joseph F. Ogden,* for defendant.

TERRY, P. J., January 3, 1933.—This is an action of ejectment brought by Charles H. Cooke against C. Lewis Doll to recover the possession of about three eighths of an acre of land in Monroe Township.

The plaintiff and defendant were adjoining landowners by titles derived from a common source, starting in 1849 with a deed from Elias Hoyt to O. D. W. C. Orcutt, and ending, on the part of the plaintiff, following certain conveyances and orphans' court proceedings, with a conveyance to him in 1917 of 40 acres. Charles H. Cooke died after bringing suit, and his widow, Clara D. Cooke, as his sole devisee, was substituted of record as plaintiff.

The defendant traced his title to his adjoining 3-acre piece of land from said Orcutt and by succeeding conveyances to his mother, Emily Doll, in 1887. She died intestate in 1889, leaving as her heirs the defendant and other children. By conveyances back and forth by them, her title became vested in the defendant in 1921.

The small piece of land in dispute, containing, as stated, about three eighths of an acre, is situated at or near a corner, in the lines of and between the said lands of the parties to this action.

The defendant, in his abstract of title, not only averred a paper title to such small piece of land, but in addition its adverse possession by himself and his predecessors in title and possession for more than 40 years.

That the title to their respective lands and their possession of the same, aside from the piece in controversy, were as asserted by these parties was not controverted; but whether their paper titles embraced such piece, and also the claimed adverse possession thereof by the defendant, were the disputed questions, and upon them the case was tried and upon the question of adverse possession submitted to the jury.

The verdict was for the defendant, and the motions of the plaintiff for judgment n. o. v., and for a new trial are now for our consideration and decision.

So far as the paper title of the plaintiff is concerned, the case hinged upon a certain course and distance in some of the deeds of his chain of title, viz., "south 35 degrees east, 40 perches." Admittedly this was an error, and the testimony of two surveyors called by the plaintiff, one of them her son, was that in order to close the survey there must be an adjustment thereof, as without it and giving effect to this course and distance appearing in the descriptions in the conveyances, the land of the plaintiff would include the defendant's buildings upon his land—which was not claimed. Those surveyors accordingly at some length testified to their view of a proper correction of such error, by which the disputed piece of land would be within the lines of the plaintiff's land described in the conveyances in his paper title.

The defendant also called a surveyor to sustain his title by conveyances, who, however, simply ran the lines of the fence which the defendant asserted enclosed the land in controversy—by which enclosure he claimed adverse possession thereof—without reference to the corners or lines of the adjacent lands. Consequently, his testimony was without avail to the defendant, and it was plainly so indicated to the jury, who were instructed that the only testimony on this point in the case showed that the corrected description placed the land in the plaintiff's chain of title. Accordingly, we charged the jury that it was incumbent upon the defendant to overcome that title by showing adverse possession, which became the pivotal question in the case.

To support such contention, the defendant adduced testimony to the effect that the piece of land in dispute had become appurtenant to the other real estate there—the 3-acre lot—by enclosure by a fence antedating the purchase of such real estate in 1887 by his mother, and had remained in the possession of the occupants of such enlarged quantity of land—his mother and then her heirs and himself—to the time of trial, a period of more than 40 years. This testimony embraced not only the continuous existence of the fence, as first erected, but also its repair during such period. While there was testimony on the part of the plaintiff admitting the fence was there when the suit was brought, it was denied that it had been in such location more than a short time—much less than 21 years.

The defendant introduced testimony to show that he and his predecessors in title and possession had, during the period of their occupancy of the 3-acre piece

of adjoining land, gone upon this disputed piece in the exercise of ownership thereof, such as once trying to raise onions and sometimes cutting grass and brush there, but as such testimony amounted to no more than occasional trespasses—not enough to establish a claim of cultivation—we instructed the jury that it was insufficient to give title by adverse possession.

We further instructed the jury, in substance, that the mere fact that the defendant and his family—meaning his mother, and after her decease his brothers and sisters—had continuously lived upon their adjoining land a long period of time, would not permit them to claim adverse possession of the disputed piece unless they showed such possession distinctly. We should have said more in this connection. There was testimony that the erection and maintenance of the fence enclosing, as contended, the piece of land in controversy antedated the conveyance of the adjoining land to Emily Doll in 1887. On her death, her possession was transmitted to her heirs, by whom, the defendant claimed, the fence and possession were maintained. The deeds in the defendant's chain of title embraced the appurtenances to the land conveyed, and the piece in dispute, if enclosed, passed therewith, as held in Scheetz v. Fitzwater, 5 Pa. 126, Chief Justice Gibson there stating, in the opinion, that "A proprietor who occupies his neighbour's land as a part of his farm, may certainly transfer his possession of the whole by a conveyance of the farm." This phase of the case was omitted in the charge.

By the familiar principle of tacking adverse possession, which may operate by descent as well as by conveyance: Graffius v. Tottenham, 1 W. & S. 488, Watson v. Gregg, 10 Watts 289, 1 R. C. L. 718, sec. 32; the defendant here could join his possession to that of his mother and her other heirs. She purchased the 3-acre piece on April 6, 1887, and occupied it until her death, intestate, on September 11, 1889, when it passed by operation of law to her children as tenants in common, the title and possession remaining in all of them until March 21, 1908, when Blanche Miller, her daughter, conveyed her undivided interest to the other tenants in common, who continued in possession until 1910, when the defendant and his sister Lulu conveyed their interests to his brothers Stanley and Harry. In 1911, Harry conveyed his interest to Stanley, and in 1921 the latter, having acquired the interests of all the others, conveyed the land to the defendant, who has since had possession, admitted by the plaintiff in bringing suit.

It will be observed that the possession of the defendant's mother dated from 1887 and descended to her heirs in 1889, remaining in all of them, except Blanche Miller, until 1910, a period of more than 21 years, when their title by adverse possession became absolute—crediting the testimony adduced by the defendant as to the enclosure by fence of the disputed piece—regardless of the effect of the conveyances in his line of title (whether they did or did not by description include such piece) under the case of Scheetz v. Fitzwater, supra. Of course, the possession of any one of the brothers or sisters of the defendant as tenant in common with the others inured to the benefit of all of them: Graffius v. Tottenham, 1 W. & S. 488; Carothers et al. v. The Lessee of Dunning et al., 3 S. & R. 373.

Some question has been raised as to title by adverse possession by enclosure alone—without cultivation. It is true that in some cases language has been employed signifying that enclosure and cultivation must be united to gain title by adverse possession, in the absence of residence on the land in question; and one of the noted Hole v. Rittenhouse cases, reported in 37 Pa. 116, is cited in support of the argument that enclosure alone is insufficient. However, in that case and others where the two words, enclosure and cultivation, are joined

by the conjunctive "and", in other parts of the same opinions the disjunctive "or" is used. See also Sorber v. Willing, 10 Watts 141, and Adams v. Robinson, 6 Pa. 271. However, we need not stress such use of those words, because in Stephens v. Leach, 19 Pa. 262, 265, Justice Gibson said: "Residence, though necessary to constitute a settlement, is not necessary to constitute adverse possession. The latter may be, by cultivation and enclosure, by cultivation without enclosure, or by enclosure without cultivation".

In 1 R. C. L. 698, sec. 11, it is said: "The inclosure of land is undoubtedly evidence of possession, and, either of itself or in connection with other acts of ownership, may be sufficient on which to base an adverse claim."

In the very recent case of Robin v. Brown et ux., 308 Pa. 123, Justice Maxey approvingly cited the foregoing reference to 1 R. C. L. 698, and fully recognized that enclosure by a fence, as here claimed, of substantial character and continuously maintained for 21 years, will give title by adverse possession.

And in Laskowski et ux. v. Raucheisen et ux., 100 Pa. Superior Ct. 428, 431, that court affirmed a judgment in ejectment for the plaintiff upon the opinion of Judge Finletter in which he said, inter alia: "No act could be more overt, or could more emphatically assert a claim to the land, and a denial of the title of all others, than the enclosure of the lot. Standing alone this is ample evidence of a hostile, adverse taking and holding of the land."

We conclude that the defendant adduced sufficient evidence of adverse possession for a period of more than 21 years preceding the suit, and that as the plaintiff admitted him in possession by bringing the suit, such possession, shown by competent testimony to have been in the defendant and his predecessors by said enclosure for such period, fully supports the verdict rendered, although such testimony was contradicted by that introduced by the plaintiff. It was of course a question of fact for the jury and was so left to them.

The motion for judgment for the plaintiff n. o. v. is denied, the reasons for a new trial are overruled, and a new trial is refused.