Gerhart et ux. *v.* Hilsenbeck et al., Appellants.

Argued October 4, 1948. Before Rhodes, P. J., Hirt, Reno, Dithrich, Ross, Arnold and Fine, JJ.

reargument refused February 18, 1949.

*John J. Gain*, with him *Thomas F. Gain* and *G. Ayres Swayze*, for appellants.

*Frederick Beyer*, for appellees.

Opinion by Reno, J., January 14, 1949:

Plaintiffs sued in equity to compel defendants, who are owners and their tenant, to remove obstructions from an alley in the rear of their respective properties. The chancellor found for plaintiffs, and defendants' exceptions were dismissed by the court en banc.

Plaintiffs secured title to No. 6316 Norwood Street, Philadelphia, by a deed dated July 22, 1942. It describes premises fronting on Norwood Street 14 feet 6 inches wide and extending 87 feet "to a certain three feet wide alley, which leads Southwardly and into another three feet wide alley, which leads Eastwardly into another three feet wide alley, which leads Eastwardly into said Norwood Street. Together with the free and common use, right, liberty and privilege of the aforesaid alleys as and for a passage way and water course at all times hereafter forever."

The Hilsenbecks own No. 6312 Norwood Street, which they secured by a sheriff's deed dated June 25, 1934. It describes premises of the same width as plaintiffs', ex-

tending 57 feet "to a certain three feet wide alley which leads Southwardly and into another three feet wide alley leading Eastward into Norwood Street; thence extending Northward along the first above mentioned alley Four feet to a point; *thence extending further Westward along the North side of a certain other three feet wide alley Thirty feet to a point*; thence extending Northward along the East side of a certain other Three feet wide alley Ten feet Six inches; thence extending Eastward along a line at right angles between parallel lines to the said Norwood Street Eighty-seven feet to Norwood Street; thence extending Southward along the said Norwood Street Fourteen feet six inches to the place of beginning. . . . Together with the free and common use, right, liberty and privilege of the aforesaid alleys as and for passageways and water courses at all times hereafter forever." (Emphasis added.) The sheriff's deed was made pursuant to a sale of the premises upon a mortgage given by the then owners to the Hilsenbecks on October 16, 1923. The description contained in the mortgage does not appear in the record, but at the argument we were informed that customarily the sheriff's office follows the descriptions included in mortgages.

The Hilsenbecks defended upon the ground that the easement in the alley had been extinguished by the adverse possession of themselves and their predecessors for the period of the Statute of Limitations. The burden of proof was upon them, and they were required to show by the fair preponderance of the evidence the essentials of adverse possession. They failed to establish a case, and the decree will be affirmed.

Obstructions of some character were placed in that portion of the alley described in the Hilsenbecks' deed as a "three feet wide alley thirty feet [long]" as early as 1919. The Hilsenbecks did not take possession until 1934, but they contend that they were permitted to tack the adverse possession of their predecessors to their own, and thereby make out the full prescriptive period.

Their proposition is not tenable. Their deed describes their premises as bounded by the alley. Neither it nor the mortgage purported to convey more land than that contained within the boundaries fixed by the alley. There was no attempt in the deed to convey any portion of the alley, and there was no evidence of an intention aliunde the deed to convey more than was described in the deed. The deed recognized the existence of the alley, and subjected it to a "free and common use". Continuity of possession may be established by a sheriff's deed. *Scheetz v. Fitzwater*, 5 Pa. 126. But "A deed does not of itself create privity between the grantor and the grantee as to land not described in the deed but occupied by the grantor in connection therewith, although the grantee enters into possession of the land not described and uses it in connection with that conveyed. . . . The deed, in itself, creates no privity as to land outside its calls. Nor is privity created by the bare taking of possession of land previously occupied by the grantor. Likewise, where a deed expressly excludes certain property occupied by the grantor in connection with that conveyed, the grantee, even though he succeeds to the possession of that property, cannot tack the grantor's possession to his own": 1 Am. Jur., Adverse Possession, §156. See also 1 Thompson on Real Property, §446; 5 Id. §2653; 46 A. L. R., Annotations, p. 792.

This general rule, supported by decisions in many states, is the law in Pennsylvania. As early as 1859, the Supreme Court said in *Schrack v. Zubler*, 34 Pa. 38, 41: "No doubt, a succession may be kept up by tacking possessions; but each succeeding occupant must show title under his predecessor, so as to preserve a unity of possession. If this were not so, the first intruder might abandon his intention of holding adversely and leave the possession, and a succeeding one might enter and claim, without authority, a quality in the predecessor's possession which he had abandoned. Zubler could only claim Herring's possession as enuring to his use, by virtue of

some conveyance of it, which we have seen he had not." On the second appeal of the same case, *Zubler v. Schrack,* 46 Pa. 67, 72, Mr. Justice THOMPSON said: ". . . an adverse possession begun and continued for a time, in order to be available to a successor, must be transferred to such successor in some lawful manner. This is as true as that property can only be rightfully acquired with the assent of its owner, or vested by operation of law. As therefore an adverse possession of an occupier, although not ripened into a complete title, is a step towards title, and is property, like property it must be transmitted, so as to vest in a successor a right to that which had been gained by such occupation: Overfield v. Christie, 7 S. & R. 173; [Scheetz v. Fitzwater] 5 State Rep. 126."

The principle has been applied several times by this Court. In *Shaffer v. Lauria,* 50 Pa. Superior Ct. 135, 141, the defendant relied upon adverse possession by him and his predecessors; but a verdict for plaintiff in ejectment was affirmed, and this Court said: "Even if there was room under the testimony . . . for a finding that any possession by Gehner of the strip in dispute, which was wholly outside the lines of his deed, was so adverse to the real owner as to create what has been called a sprouting title to the strip of land in dispute, it is also clear that he made no attempt to convey any such interest to the present defendant." In the more recent case, *Masters v. Local Union No. 472, U. M. W.,* 146 Pa. Superior Ct. 143, 22 A. 2d 70, Judge HIRT reviewed the foregoing authorities, followed them, and speaking for this Court, held that acceptance of a deed describing boundary lines confines the premises to the area within the boundaries, and that such a deed did not convey inchoate rights acquired by uncompleted adverse possession.

The two cases upon which defendants rely do not controvert the rule. They rest upon another phase of the rule to which we have already adverted, whereby an intent to convey more than the described premises may be inferred from circumstances, and perhaps from the

deed itself. In *Scheetz v. Fitzwater*, supra, a mill-pond, held under a base fee, no longer used for that purpose and adversely occupied as arable land, was held to pass under a conveyance of the mill with its appurtenances. *Stark v. Lardin*, 133 Pa. Superior Ct. 96, 1 A. 2d 784, holds that privity results even when there is a defective description in the deed where possession has been actually transferred with intent to pass the title. Here there is no claim that the deed was defective, and the word "appurtenances" does not appear in appellants' deed. Even if it had appeared it would be referrable only to the alley established by deed as a right of way "for free and common use". In no way do these cases impinge upon the doctrine laid down in the *Masters* case, supra, which we follow.

The principle rules this case, and since defendants' adverse possession, if any, commenced in 1934, and not before, it has not continued long enough to bar plaintiffs' rights.

However, if it were necessary to review and analyze the evidence it would be found to sustain the chancellor's basic findings. Obstructions were erected at both ends of the thirty foot area of the alley as early as 1919. At first they were swinging gates which may have impeded but did not prevent passage. Later, probably in 1937 or 1938, more secure and effective obstacles were installed. These are described variously in the testimony as gates or fences, but whatever their character, they were constructed of metal, fastened securely, and effectually barred use of the alley after that time. The presence of swinging gates have little significance, and the firmly fixed gates or fences were not in place long enough to extinguish plaintiffs' right. Significance does attach, however, to the fact that the character of the pavement in the alley remained unchanged. It was constructed of concrete, and it has not been disturbed, improved, ploughed up and converted into a garden, or otherwise incorporated into defendants' yard. The alley has re-

mained physically an alley, except for the gates, and their presence alone would not have made the possession adverse until after 1939. *Blauser v. Carson*, 74 Pa. Superior Ct. 223. In *Nauman v. Kopf*, 101 Pa. Superior Ct. 262, 266, defendants' principal authority, the plaintiff who claimed title by adverse possession was allowed to recover, not only because he had erected a fence but had planted trees and shrubbery in the enclosed space, which this Court said would not have been done "on the right of way of another if he has no intention of keeping it adversely." In short, the adverse claimant had established complete, and not partial or equivocal, dominion over the disputed land.

Needless to say a right of way established by a deed is not destroyed by non-user. *Nickels v. Hand in Hand Cornet Band*, 52 Pa. Superior Ct. 145.

Decree affirmed; appellants to pay the costs.