515 A.2d 927

John CASTRONUOVO and Hazel Castronuovo, H/W

v.

Andrew J. SORDONI, III and Susan Sordoni, H/W, Edmund C. Wideman, III and Jeanne C. Wideman, H/W, Appellants.

Superior Court of Pennsylvania.

Argued May 14, 1986.

Filed Sept. 22, 1986.

Ronald V. Santora, Wilkes-Barre, for appellants.

Mark A. Peleak, Kingston, for appellees.

Before CAVANAUGH, WICKERSHAM and ROBERTS, JJ.

WICKERSHAM, Judge:

The present litigation was initiated to determine ownership of approximately 3.8 acres of unimproved land (parcel C) situated in Wilkes-Barre, Pennsylvania. Parcel C shares its eastern bound with a 50' × 100' rectangular lot (parcel B) and a $^{76}/_{100}$ acre triangular plot of land (parcel A). *See*

Appendix.  It is undisputed that parcels A and B are owned and occupied by John and Hazel[1] Castronuovo.

This appeal is before our court from the verdict of the Court of Common Pleas of Luzerne County granting Hazel and John Castronuovo quiet title to parcel C by adverse possession.  Appellants present the following issue for our review:

Whether the Lower Court committed an error of law in finding that the Appellees acquired title to the land in question by adverse possession absent any purported conveyance of the same by Appellees' predecessor.

Brief for Appellants at 3.  For reasons stated herein, we reverse.

By deed of Albert Lewis, dated February 16, 1916, and recorded in Luzerne County Deed Book 507, page 544, William MacNeal acquired title to a triangular parcel of land containing approximately seventy-six one-hundredths ($^{76}/_{100}$) acres of land (parcel A).  *See* Appendix.  Shortly thereafter, MacNeal built a house on parcel A where he, his wife, and daughter (appellee herein) lived.  In, or around, 1939, MacNeal erected what are referred to as a "barn" and "candy stand" outside the boundaries of parcel A.  MacNeal used and occupied the land immediately surrounding the structures under a claim of right.

On July 1, 1940, by deed recorded in Luzerne County Deed Book 798, page 193, William MacNeal conveyed parcel A to Michael Donahue.  Donahue apparently deeded parcel A back to MacNeal the same day recorded in Luzerne County Deed Book 798, page 194.  MacNeal thereafter continued his use[2] of parcel A and the land surrounding the

1.  We note that although the record indicates that Mrs. Castronuovo's first name is spelled "Hazle," her signature on the Declaration of Taking presents the proper spelling as "Hazel."

2.  The testimony of witnesses indicate that from approximately 1932 until his illness in 1963, MacNeal used much of the land adjacent to parcel A for various purposes.  MacNeal had rented parking spaces, rented land to gypsies, and at one time had a saw mill and barbecue pits on the land bordering parcel A.  There is also testimony to the effect that MacNeal fenced and posted portions outside the bounds of

"barn" and "candy stand" until illness forced him to leave his residence to live with his daughter in New York in 1963.[3] From this time until 1973, a friend of the family, Simeon J. Bogan, acted as caretaker for MacNeal, and later Hazel Castronuovo. Bogan lived in the MacNeal house and maintained the grounds of parcel A and the roads leading from the main road to the house. During the same years another friend, Charlie Steckler used the "barn" and area immediately surrounding it to repair trucks. This was done with the permission of William MacNeal.

By deed dated April 22, 1965 and recorded in Luzerne County Deed Book 1565, page 200, MacNeal conveyed parcel A plus the 50' × 100' plot of land on which the "barn" and "candy stand" are situated (parcel B), and rights of ingress and egress to his daughter Hazel Castronuovo, appellee. In said deed MacNeal claimed he entered parcel B in 1939 and had built on, used, and occupied it continuously and under a claim of right. There was no mention of the nearly 3.85 acres of land (parcel C) which adjoins parcels A and B.

Andrew J. Sordoni, III, Edmund C. Wideman, III, and their wives acquired title to the acreage which encompasses parcels B and C from the Blue Coal Corporation[4] by quitclaim deed on August 6, 1973 recorded in Luzerne County Deed Book 1793, page 50.[5]

On July 26, 1974, Hazel Castronuovo filed a Declaration of Taking claiming ownership of parcels B and C by adverse

parcel A. Although the above-mentioned uses of the land adjacent to parcel A are evident from the 1930's through the mid 1950's, such usages have since been discontinued.

3. Hazel Castronuovo, MacNeal's daughter, was raised on parcel A until she moved to Long Island, New York in 1940. Hazel married John Castronuovo in 1942 and they resided in the State of New York until 1973 when they moved into the MacNeal house situated on parcel A. MacNeal died while under Hazel's care in 1969.

4. Blue Coal Corporation acquired title to same from The Hudson Coal Company by deed dated November 21, 1960 and recorded in Luzerne County Deed Book 1470, page 24.

5. The Widemans have since acquired the Sordonis' interest in the property in question.

possession as a result of her succession to her father's continuous adverse use of the same from 1916 until 1969.[6] Castronuovo and her husband commenced a quiet title action on March 5, 1980 in an attempt to confirm their title or ownership of parcel C. This matter was tried before the Honorable Bernard J. Podcasy commencing on December 3, 1984. The court issued its verdict and opinion on March 14, 1985, finding in favor of Hazel and John Castronuovo. Appellants' motion for post-trial relief was denied on October 3, 1985. Judgment was entered on April 30, 1986. Appellants thereafter filed a timely notice of appeal with this court on October 25, 1985.

The burden of proof in an action to quiet title is on the plaintiff. *Cox's, Inc. v. Snodgrass*, 372 Pa. 148, 152, 92 A.2d 540, 541–42 (1952). In such an action, the plaintiffs Castronuovo in the matter *sub judice*, can recover only on the strength of their title and not upon the weakness of the defendants' (Sordoni-Wideman) title. *Albert v. Lehigh Coal and Navigation Co.*, 431 Pa. 600, 607, 246 A.2d 840, 843 (1968). Where, as here, the trial court has determined that the Castronuovos have met their burden of proving title, that determination will not be reversed in the absence of an error of law or a capricious disregard of evidence. *See Piccinini v. Teachers Protective Mutual Life Insurance Co.*, 316 Pa.Super. 519, 524, 463 A.2d 1017, 1021 (1983). Upon review of the record, applicable statutory authority, and caselaw, we conclude that the lower court committed an error of law in its interpretation and application of the principle of "tacking" by a grantee to acquire his grantor's interest by adverse possession in land not described in the conveyance.

The foundation for title by adverse possession in this Commonwealth is the Act of March 26, 1785, 2 Sm.L. 299

---

**6.** Because Castronuovo admittedly has not satisfied the requirements to gain title by adverse possession for the statutory period of 21 years, she attempts to "tack" onto her father's alleged possession of parcel C from 1916 until his death in 1969.

§ 2, 12 P.S. § 72 (*see* 42 Pa.C.S. § 5530; 68 P.S. § 81) which provided:

§ 72.   No entry or right of action allowed after twenty-one years.

From henceforth no person or persons whatsoever shall make entry into any manors, lands, tenements or hereditaments, after the expiration of twenty-one years next after his, her or their right or title to the same first descended or accrued; nor shall any person or persons whatsoever have or maintain any writ of right, or any other real or possessory writ or action, for any manor, lands, tenements or hereditaments, or the seisin or possession of him, her or themselves, his, her or their ancestors or predecessors, nor declare or allege any other seisin or possession of him, her or themselves, his, her or their ancestors or predecessors, than within twenty-one years next before such writ, action or suit, so hereafter to be sued, commenced or brought.

*Lisowski v. Mastromarco,* 281 Pa.Super. 303, 305, 422 A.2d 180, 181 (1980).

Thus, it has long been the law in Pennsylvania that, "one who claims title by adverse possession must prove that he had actual, continuous, exclusive, visible, notorious, distinct, and hostile possession of the land for twenty-one years.... Each of these elements must exist, otherwise the possession will not confer title." *Conneaut Lake Park, Inc. v. Klingensmith,* 362 Pa. 592, 594–95, 66 A.2d 828, 829 (1949) (citations omitted).

Further, "[a]n adverse possessor must intend to hold the land for himself, and that intention must be made manifest by his acts....   He must keep his flag flying and present a hostile front to all adverse pretensions." *Smith v. Peterman,* 263 Pa.Super. 155, 161, 397 A.2d 793, 796 (quotations and citations omitted).

The testimony established that William MacNeal kept his flag flying on parcel B from 1939 until he conveyed parcel B, parcel A, and rights of ingress and egress to his daughter, Hazel Castronuovo, by deed dated April 22, 1965.   Be-

cause MacNeal met the requirements to obtain title by adverse possession in excess of the twenty-one-year statutory period, he could freely convey these rights to Hazel by deed in 1965. There was, however, no attempt in the deed to convey any portion of parcel C. For this reason, Hazel Castronuovo brought the present quiet title action under principles of adverse possession by tacking onto the inchoate interests of her father in parcel C.

The possession of successive occupants may be tacked, but only where there is privity between them. *Masters v. Local Union No. 472, United Mine Workers,* 146 Pa.Super. 143, 22 A.2d 70 (1941). For our purposes, "privity" refers to a succession of relationship to the same thing, whether created by deed or other acts or by operation of law. *Stark v. Lardin,* 133 Pa.Super. 96, 1 A.2d 784 (1938).

> But a deed does not of itself create privity between the grantor and the grantee as to land not described in the deed but occupied by the grantor in connection therewith, although the grantee enters into possession of the land not described and uses it in connection with that conveyed * * * The deed, in itself, creates no privity as to land outside its calls. Nor is privity created by the bare taking of possession of land previously occupied by the grantor.

*Gerhart v. Hilsenbeck,* 164 Pa.Super. 85, 88, 63 A.2d 124, 126 (1949) (quotations omitted).[7] Our court has held that acceptance of a deed describing boundary lines confined the premises to the area within the boundaries, and that such a deed did not convey inchoate rights acquired by incompleted adverse possession. *Masters, supra.* Each predecessor

---

7. We take note of the exception recognized by the *Gerhart* court in cases such as *Scheetz v. Fitzwater,* 5 Pa. 126 (1847), where "an intent to convey more land than the described premises may be inferred from circumstances and perhaps from the deed itself." *Id.,* 5 Pa. at 128. In the case *sub judice,* however, the deed is void of such an intent and the circumstances reflect a gradual abandonment of parcel C between the 1950's and conveyance of parcels A and B to Hazel Castronuovo in 1965.

must have claimed title to the property in dispute, and in transferring to his successors must have purported to include it. *Shaffer v. Lauria,* 50 Pa.Super. 135 (1912). In the absence of a conveyance by MacNeal of inchoate interests in parcel C, which may have been acquired by possession, it must be assumed that he occupied parcel C either permissively, or that he had abandoned every intention of an adverse holding before conveyance. *Masters, supra.* [8]

Accordingly, we find the lower court's determination that Hazel and John Castronuovo proved title to parcel C by adverse possession to be an error of law and in capricious disregard of the evidence. We therefore reverse.

Judgment reversed.

8.  We recognize that:
    In the middle of the 19th century, Chief Justice Gibson, in *Scheetz v. Fitzwater,* supra, held that the purchaser of record title to certain land may, at the same time, acquire his grantor's interest by adverse possession in land not described in the conveyance, and may tack his grantor's possession to his own. However, subsequent cases contain contrary language, and in 1941 the Superior Court held that a grantee of certain lands could not tack his grantor's possession as to land not described in the deed. This decision was followed by *Gerhart v. Hilsenbeck,* supra, which held that the deed in question could not convey the grantor's rights, by adverse possession, in land outside the description, but recognized an exception in cases such as *Scheetz v. Fitzwater* where "an intent to convey more than the described premises may be inferred from circumstances, and perhaps from the deed itself." 1 P.L.E. Adverse Possession § 34 (footnotes omitted).