687 A.2d 822

William M. MOORE and Richard L. Moore, Appellants (at 148).

v.

Timothy P. DURAN and Victoria Duran, His Wife.

William M. MOORE and Richard L. Moore

v.

Timothy P. DURAN and Victoria Duran,
His Wife, Appellants (at 217).

Superior Court of Pennsylvania.

Argued Oct. 2, 1996.

Filed Dec. 4, 1996.

Reargument Denied Feb. 12, 1997.

Arthur M. Wilson, Washington, for Moore.

John W. McCreight, Washington, for Duran.

Before KELLY, JOHNSON and OLSZEWSKI, JJ.

JOHNSON, Judge.

In these cross-appeals, we are asked to determine the propriety of the Order dated December 29, 1995, finalizing the decree nisi that barred Timothy P. and Victoria Duran (the Durans) from asserting any right to certain land located in Washington County, Pennsylvania. The order in question found that title to the disputed property properly resided in William M. and Richard L. Moore (the Moores). The Order also granted the Durans a prescriptive easement over a portion of the disputed land for the purposes of ingress and egress. We find that the court did not err in amending the final decree to include an easement in favor of the Durans on

the property in question. In addition, we find that the Durans have failed to establish continuous possession of the tract for the required twenty-one year period which is necessary to establish adverse possession. Accordingly, we affirm the order in all respects.

This appeal began as a quiet title action filed by the Moores in December 1993. The Moores own three tracts of land in Smith Township, Washington County; one tract consists of a 150 acre farm that shares a common boundary with the Durans' 110 acres that they have used to raise and pasture cattle. The disputed parcel of land is a triangular section consisting of .534 acres, enclosed by a fence on two sides, and contains access to an unused township road leading into the Duran residence. Moore is the record owner of the six-acre parcel of land that includes the .534 acre section in dispute. In November 1993, Timothy Duran noticed Richard Moore hunting on this disputed section of land inside the fence, and informed Moore that he was trespassing on Duran's property.

As a result, the Moores filed an action to quiet title to the six-acre parcel of land. The Durans defended the action by asserting that they held a prescriptive easement over the former township road leading into their property, and that they had acquired title to the disputed .534 acres through adverse possession. Following a bench trial, the court entered a decree nisi that declared the Moores to be the owners of the .534 acre section of property in dispute, free and clear of the Durans' claims. The decree nisi did not mention any prescriptive easement. The Durans filed a motion for post-trial relief, which was argued before the trial court en banc. On December 29, 1995, the en banc court entered an order that denied the Durans post-trial motions but clarified the decree nisi to "grant[ the Durans] continued enjoyment of the former public roadway across the subject premises for purposes of ingress and egress." Both parties have appealed.

### The Moores' Appeal at No. 148 Pittsburgh 1996

The Moores contend on appeal that the trial court erred in "clarifying" its decree nisi to include the rights of

ingress and egress. The Moores claim that this action by the en banc court denied them the right to present testimony at trial regarding the claimed easement. The Moores maintain that, instead of inserting the easement provision in the final order, the trial court should have ordered a new trial limited to a determination of the easement.

The Moores claim support for their position in Rules 227.1(a)(1) and 1038 of the Pennsylvania Rules of Civil Procedure. Rule 227.1 sets forth the procedures relating to post-trial motions; specifically, section (a)(1) states that following a party's motion for post-trial relief, the trial court may "order a new trial as to all or any of the issues." Pa.R.C.P. 227.1(a)(1). Rule 1038 relates to trials held without a jury. Section (b) of this rule states that "[t]he decision of the trial judge ... shall dispose of all claims for relief." Pa.R.C.P. 1038(b). The Moores argue that when the trial court concluded that it had failed to dispose of all of the Durans' claims for relief, the only recourse available to the court was to conduct a new trial limited to the Durans' claimed easement on the disputed property.

We first note that Rule 227.1 does not *require* the trial court to conduct a new trial regarding an issue that was not covered by its original decree nisi; rather, this is one of five possible options the trial court has when faced with a motion for post-trial relief. Section (a)(4) of Rule 227.1 specifically provides that the trial court may modify or change a decree nisi after review of a post-verdict motion. Pa.R.C.P. 227.1(a)(4). Neither section of the Rule is mandatory; both are avenues that the trial court *may* follow when faced with post-verdict motions.

In addition, although the Moores claim that they were denied the right to be heard on this issue, this assertion is belied by the record. In their pleadings, the Durans specifically assert that they are entitled to a prescriptive easement to the lands abutting the former public road or contained within the fences adjacent to such road. Answer and New Matter filed on behalf of Timothy P. Duran and Victoria Duran, filed January 5, 1994, at ¶ 10. The Reply to New

Matter filed on behalf of the Moores overlooks this assertion, merely denying that the Durans' have acquired title to the disputed parcel by adverse possession. Reply to New Matter, filed January 21, 1994. The Durans' easement claim is reasserted in their motion for post-trial relief. *See* Defendants' Motion for Post–Trial Relief, filed August 8, 1994, at ¶¶ 2, 4, and 5.

An easement by prescription arises by adverse, open, continuous, notorious, and uninterrupted use of the land for twenty-one years. *Matakitis v. Woodmansee*, 446 Pa.Super. 433, 667 A.2d 228 (1995), *appeal denied*, 545 Pa. 680, 682 A.2d 311 (1996). To establish a prescriptive easement, the proponent of the easement need not prove constant use of the property; the proponent of the easement may instead produce evidence of a settled course of conduct that indicates an attitude of mind on the part of those using the property that such use is the exercise of a property right. *Id.* at 440, 667 A.2d at 231. Therefore, to establish a prescriptive easement, the Durans must have produced evidence at trial of a settled course of conduct on their part to use this road as an avenue of ingress and egress into their property.

At trial, Timothy Duran testified that, for as long as he could remember (and he had lived on that farm since he was a child), the township road was the right-of-way onto his property. N.T., April 18, 1994, at 26–27. He further testified that cows were driven up the lane and across the property to pasture during the spring and summer months in order to graze. *Id.* at 40. Timothy Duran's father, Michael Duran, testified that the township road had been leading into this land for a very long time. *Id.* at 63. Mildred Duran, Michael's wife and Timothy's mother, stated that she remembered chasing the cows down the township road to get them to pasture, beginning when she and Michael Duran first bought the property in 1946. *Id.* at 72–73. Mildred Duran further testified that she had always obtained access to the property through the old township road. *Id.* at 76. A neighbor, Doris Yoder, repeatedly referred to the old township road as it was

listed on the survey maps as "Tim's driveway." *Id.* at 85, 89, 90–91.

Richard Moore was the sole witness for the plaintiffs in this case. Moore's testimony on direct examination was limited to his ownership of the six-acre tract of land that included the .534 acre portion in dispute and the location of the boundary line between his farm and the disputed parcel of land. However, Moore was questioned on cross-examination regarding his occupancy of the property and the use of the township road. *Id.* at 17–22. Moore stated that he was aware that Duran used the road to drive into and away from his home. *Id.* at 20. Moore also testified to being familiar with the dairy cattle being driven down the road and onto the Duran's farm, as he had helped to do such work when he was a child. *Id.* at 98.

Based upon this evidence, we conclude that there was ample support for the trial court's conclusion that the easement by prescription had been established. We also find that the trial court acted within the parameters of Rule 227.1 in modifying the decree nisi to include the easement. The Moores had notice of the Durans' claimed easement through the pleadings, and testimony regarding the issue was taken at trial. A new trial limited to the question of the easement was therefore not warranted. Accordingly, we conclude that the Moores' appeal is without merit.

Appeal at No. 148 Pittsburgh, 1996: We AFFIRM.

### The Durans' Appeal at No. 217 Pittsburgh 1996

In the cross-appeal, the Durans claim that the trial court erred in granting relief to the Moores in the action to quiet title. The Durans also assert that the court erred in denying their claim of adverse possession to the .534 acre tract of land in question. Specifically, the Durans maintain that the disputed portion of land has been within their sole possession throughout this dispute.

The Durans' allege in their brief to this Court that "the trial court refused efforts by the Durans to compel the

Moores to proceed in ejectment of the matters raised by [the] Durans and conducted trial of the matter solely on issues of quiet title." Brief of Timothy P. Duran and Victoria Duran, at 3. A plaintiff in an action to quiet title must be in possession of the land in controversy; if he is not in possession, his sole remedy is an action in ejectment. *Plauchak v. Boling*, 439 Pa.Super. 156, 162, 653 A.2d 671, 674 (1995). An action to quiet title may be brought only where an action in ejectment will not lie. *Id.;* Pa.R.C.P. 1061(b)(2). "Ejectment, being a possessory action, can be maintained if the plaintiff has a right to immediate possession with the concomitant right to demand that the defendant vacate the land." *Id.* An out-of-possession plaintiff may not maintain an action to quiet title because it constitutes an enlargement of that party's substantive rights as defined by the statute, and thus exceeds the court's jurisdiction to proceed. *Id.; accord Sutton v. Miller*, 405 Pa.Super. 213, 223–24, 592 A.2d 83, 88–89 (1991).

There is no precise definition of what constitutes possession of real property; the determination of possession is dependant upon the facts of each case, and to a large extent upon the character of the land in question. *Schimp v. Allaman*, 442 Pa.Super. 365, 659 A.2d 1032 (1995). In general, however, actual possession of land means dominion over the property; it is not the equivalent of occupancy. *Glenn v. Shuey*, 407 Pa.Super. 213, 595 A.2d 606 (1991). Thus, the trial court must determine which party exercised dominion and control over the property before determining what is the proper form of action in such a case.

Both parties allege in their pleadings to the trial court that they were in possession of the disputed parcel of land, and deny that the other party was in possession. To go forward with the quiet title action, the trial court must have concluded that the Moores were in possession of the .534 acre parcel at issue here. The trial court failed, however, to set forth its reasoning on this issue; in fact, it is unclear whether the question was ever considered. The Moores also fail to discuss the matter. Regardless of the rationale, however, we conclude that the trial court's maintenance of this case as an

action to quiet title was not fatal to the cause of action claimed. This Court has previously determined that, even on appeal, we may amend the pleadings when necessary to conform to the proper form of action as established by the evidence. *See Sutton v. Miller, supra* (holding that the trial court's failure to dismiss the action to quiet title was error because the plaintiff was not in possession of the land in question; but the error was not fatal to the claim because the Superior Court could *sua sponte* amend the pleadings to include an action in ejectment); *Plauchak v. Boling, supra,* at 163, 653 A.2d at 674 ("Nevertheless, appellees' use of an incorrect form of action is not fatal to the relief granted by the trial court. Even where a plaintiff mistakenly institutes an action to quiet title instead of an action in ejectment, the appropriate remedy is to permit the plaintiff to amend his or her pleadings to conform to the proper action."). We are thus able to review the merits of the Durans' claim.

When reviewing a trial court's decision regarding an action to quiet title, we are limited to determining whether the findings of fact that led to the trial court's conclusions of law are supported by competent evidence. *Thompson v. R.R. Preservation Society,* 417 Pa.Super. 216, 612 A.2d 450 (1992). "Ordinarily, an appellate court will not reverse a determination of the trial court in a quiet title action absent an error of law or capricious disregard of the evidence." *Id.* at 221, 612 A.2d at 452.

The Moores have established that they hold the record title to the property in question. Adjudication and Findings of Fact, *supra,* at 1. Moreover, the deed to the Durans' property does not mention the .534 acres in dispute. *Id.,* Finding of Fact 4. The Durans maintain, however, that they have acquired title to the section in dispute through the doctrine of adverse possession.

To establish title in land acquired by adverse possession, a claimant must prove actual, continuous, exclusive, visible, notorious, distinct and hostile possession of the land for 21 years. *Baylor v. Soska,* 540 Pa. 435, 658 A.2d 743 (1995). Each of these elements must exist, otherwise posses-

sion will not confer title in the claimant. *Sutton v. Miller, supra; Glenn v. Shuey, supra.*

At trial, Michael Duran testified that he purchased the property at a tax sale in 1946. N.T., *supra*, at 49. The property was surrounded by a fence that included a gate to the township road. *Id.* at 52. The fence and the gate were already in place when Michael Duran purchased the property. *Id.* The property was fenced to keep the cattle in the grazing area and off the neighboring lands. *Id.* at 50. The Durans repaired the fencing around the perimeter of the property in 1946, and this helped in the chasing of the cows. *Id.* at 73. Mildred Duran testified that she actively chased the cows over the disputed parcel of land between 1946 and 1960, and that the dairy cows remained at pasture on the land until it was sold to Timothy in 1978. *Id.* at 71–72, 75. Timothy Duran raises beef cattle, and the cows continue to pasture on that land to the present time. *Id.* at 75. Timothy Duran testified that he became familiar with the property in 1951 or 1952, when he was three to four years old, when he would chase cattle across the disputed .534 acre parcel of land to his grandfather's farm to be milked. *Id.* at 27. The cows would travel down the township road, and go through the gate in the fence into the small wooded area to graze. *Id.* at 32. The family would chase the cattle through this property daily through the summer months. *Id.* at 33. With the raising of beef cattle, the cows graze on Duran's entire farm, including this parcel, throughout the year. *Id.* at 75.

Richard Moore testified at trial that, on about one to two dozen occasions from the time of purchase in 1990, he walked through and hunted on the disputed parcel of land. *Id.* at 12. Moore also admitted that the triangular parcel in dispute was fenced on two sides, on the western and south-eastern borders, and that those fences were in place when he bought the land. *Id.* at 16–17. Moore also stated that he either climbed the fence, went under the fence, or walked down the road to reach the .534 acres in dispute. *Id.* at 18, 23. Doris Yoder, the Durans' neighbor to the south of their farm, testified that the fences surrounding the area have been in place for as long as she has lived next to the property, or at least since 1960.

*Id.* at 84, 89. Celestine Moore, Richard Moore's mother, also testified to the existence of the two fences around the .534 acre parcel. *Id.* at 94–95. In fact, the Moore's counsel stipulated to the fact that the two fences existed. *Id.* at 90.

■ The trial court concluded that the Durans' use of the tract of land for the pasturing of cattle does not establish their possession of the property. We agree that this fact, in and of itself, is not sufficient. However, that fact added with the location of the fences leads this Court to conclude that the Durans have established actual possession of the property.

■ Actual possession of property may be established in connection with the maintenance of a residence, by cultivation of the land, by inclosure of the land, or by making improvements to the land and paying property taxes. *Glenn v. Shuey, supra*, at 221–22 n. 5, 595 A.2d at 611 n. 5 (citing cases). In fact, when dealing with a woodland, a person must establish actual possession of the woodland by residence or cultivation of a part of the tract of land to which the woodland belongs. *Niles v. Fall Creek Hunting Club, Inc.*, 376 Pa.Super. 260, 545 A.2d 926 (1988). Actual possession may thus be established by enclosing and cultivating the tract of land of which the woodland is a part without erecting a residence; or possession may be established by erecting a residence where there is a clear designation of the boundaries of the land surrounding such residence. *Id.*, citing *Hoover v. Jackson*, 362 Pa.Super. 532, 539, 524 A.2d 1367, 1370 (1987); *see also Robin v. Brown, et ux.*, 308 Pa. 123, 162 A. 161 (1932).

■ Where inclosure is essential to the finding of actual possession, it must be complete and so open and notorious as to charge the owner with the knowledge thereof. *Robin v. Brown, supra*. The inclosure must also be appropriate to fit the premises for the purposes to which they are adapted. *Id.* If the barriers are sufficient to indicate clear dominion over the premises, and to give notoriety to the claim of possession, it is sufficient to start running the twenty-one year period required for adverse possession. *Id.*

The trial court concluded that the Durans' fence was insufficient to establish possession because "the third side of the

tract in dispute is not enclosed by any fence nor does it have any discernible boundary demarcation." Conclusion of Law No. 8, Trial Court Adjudication, *supra*, at 6. We cannot find this lack of a fence that would separate the remainder of the Durans' farm from the land in question to be dispositive. It is clear that two fences are used to demarcate the boundary between the Moores' and the Durans' lands on the western and southern boundaries. A fence to the north of this parcel is not needed in this case; to separate this small tract of land from the rest of the Durans' farm would render the land useless as a grazing area.

Moreover, we do not agree with the trial court's finding that the Durans' failure to record a statement of adverse possession pursuant to 68 Pa.S. § 85 prior to the Moore's purchase of the property in dispute precludes their claim of adverse possession. Conclusion of Law No. 7, Trial Court Adjudication, *supra*. Section 85 only applies to parties who are out of possession of the land and nevertheless are claiming rights to the land through adverse possession. As we have concluded that the fence conclusively establishes that the Durans were in possession of the disputed parcel, this section does not apply to this case.

Following a review of the record, we conclude that the Durans have established actual and visible possession of the .534 acre tract of land in dispute. They have enclosed and utilized the property, a portion of which is woodland, as an integral part of their primary residence and as a pasture for their cattle. Because the evidence establishes that the boundaries are clearly delineated in this case, we find that the Durans have sufficiently established possession of the wooded area in dispute. *Niles v. Fall Creek Hunting Club, Inc.*, *supra*. As the Durans are in possession, they were correct in asserting that this action should properly have been one in ejectment. *Plauchak, supra*. This determination, however, will not prevent us from determining whether the Durans have established the remaining elements of their adverse possession claim. *Id.*

 Here, Michael Duran had continuous possession of this parcel from his acquisition of the land through the tax sale in 1946 through his conveyance to his son in 1978. Thus, he has satisfied the twenty-one year requirement, and he could freely convey the rights to the parcel in dispute to Timothy Duran. *Castronuovo v. Sordoni*, 357 Pa.Super. 187, 515 A.2d 927 (1986). However, the 1978 deed does not reference this disputed parcel in its description of the land conveyed. Therefore, father and son do not have privity between them regarding this land. *Id.*

> [A]cceptance of a deed describing boundary lines confine[s] the premises [conveyed] to the area within the boundaries, and ... such a deed d[oes] not convey inchoate rights acquired by incompleted adverse possession. Each predecessor must have claimed title to the property in dispute, and in transferring to his successors must have purported to include it.

*Id.* at 193–94, 515 A.2d at 931 (citations omitted). Because the deed does not convey Michael Duran's interest in the disputed parcel, Timothy Duran must independently establish that he has had possession of the property for the required amount of time. *Id.* Accordingly, Timothy Duran's possession of the disputed parcel of land fails to meet the required twenty-one years of continuous possession, and his claim of adverse possession of this parcel must fail.

 Moreover, even if this action had been brought in ejectment, as the Durans' possession of the land dictates, we find that the result would not have been different. The Moores' burden in an action in ejectment is clear: they must establish the right to immediate exclusive possession of the land. *Doman v. Brogan*, 405 Pa.Super. 254, 592 A.2d 104 (1991).

> Recovery can be had only on the strength of their own title, not the weakness of defendant's title. The crux of an ejectment action, therefore, rests with the plaintiffs' ability to identify, by a preponderance of the evidence, the boundaries of a parcel of land to which they are out of possession but for which they maintain paramount title.

*Id.* at 263, 592 A.2d at 108 (citations omitted). Here, the Moores' deed unquestionably gives them record title to the disputed parcel of land. *See* Deed between Raymond Bologna and Bologna Coal Co. and Richard L. and William M. Moore, filed January 21, 1992, Plaintiff's Exhibit 2; *see also* Adjudication and Findings of Fact, *supra*, at 1. Their title is paramount, therefore, to the Durans' asserted claim that we have found fails to establish title through adverse possession. Thus, the trial court properly held that title to the disputed .534 acres of land resided in the Moores.

Based upon the foregoing, we find no error in the trial court's determination that the Durans had failed to prove their claim of adverse possession. Accordingly, we conclude that the order that quieted title in the Moores must be affirmed.

Appeal at No. 217 Pittsburgh, 1996: We **AFFIRM.**

Order of December 29, 1995, Court of Common Pleas, Washington County, Civil Division at No. 93–7338 is **AFFIRMED.**