# Hughs *versus* Pickering.

1. Where a trespasser on land commences an improvement, and makes a gift of his right to another, or authorizes a sale of it, and leaves the possession, and it is sold, and the vendee takes possession in pursuance of the contract, the possession of the trespasser can be tacked to his own, so as to give title to the vendee, by the statute of limitations.

2. Where the possession of a trespasser is *abandoned*, the law casts the possession on the legal owner; but to constitute abandonment and create a vacancy to produce that effect, the title of a subsequent holder must be *unconnected* with the title of the previous holder; but when the entry of the subsequent holder is with the permission of the previous holder, the former may tack the one possession to the other: and *actual possession* by the *first* holder at the time of the entry by the second, is not neccessary to authorize that result.

3. If a settler designate his boundaries by the lines of the surrounding surveys, his vendee can claim the land within those boundaries; if otherwise, he can claim only the part actually enclosed and improved.

ERROR to the Common Pleas of *Jefferson county*.

This was an action of ejectment by John Pickering *vs*. Joseph Hughs and others, to recover the possession of a tract of land of two hundred acres, in Rose township, Jefferson county, part of warrant No. 371, issued on the 17th May, 1785, to Timothy Pickering. His heir at law was the Hon. John Pickering, and the plaintiff claimed that at his death, the title to this land vested in him.

The defendants relied on the statute of limitations, and the only

[Hughs *v.* Pickering.]

question in the case was, whether the defendants had acquired title by the statute.

On the trial, George Mason testified: "I made the first improvement on the place in May, 1825; I deadened timber in May, grubbed six acres in June, chopped logs and saplings on four acres, burnt brush, chopped logs in July; I had a shanty about ten by twelve feet square; my brother-in-law, Israel Bartlett, died; he lived near the place, within forty or fifty rods; he married my sister; I told her she might take my right and sell it, and if she could get any thing for it, well and good. I did not work any more after my brother-in-law died in July, 1825. Several tracts adjoined the land I claimed; I calculated to claim all the land in the piece; I had no other survey, only traced the tracts adjoining; Maxwell and Guthrie had traced the lines on adjoining tracts for me. I was with them; was carrying chain for Judge Shippen; run one line along the pike. They showed me a piece of land I might make my own if I would take care of it. I had just commenced on it. When we came to white oak, we were not surveying this tract. I claimed to the lines we were running that day. I commenced in May, 1825. I helped Bartlett on another tract; he did not work on this improvement."

Mrs. Long, the widow of Bartlett, testified, that *Bartlett* made the improvement on the land in dispute. That he was then living on an adjoining tract. That he died there in July; don't know the year. She said that she sold the land to Hughs; precise time not stated. That Geo. Mason was at work on the same place.

She further said, I paid George Mason the half the money that I got for the land. She says that he was living with them, and she does not know whether he was to get a part of the land or not. Hughs gave me five dollars in money for the improvement. She did not get any thing but the five dollars in money. George Mason worked on the land the fall after Bartlett died, and he was working for me.

Hughs took possession probably in August, 1826. The ejectment was commenced in March, 1847, within twenty-one years after possession taken by him.

It was testified that the place has been occupied every year; the cabin, about a third of the time. Between twenty-five and forty acres cleared; no other building on it; occupied every year in some way or other.

Knox, J., charged, *inter alia:*

This suit was commenced in March, 1847, and to make the twenty-one years, it is necessary for Hughs to connect the position of Mason or Bartlett with his; otherwise, he is within the limitation.

The first question is, whether Hughs is in a position to avail himself of the possession or claim of Mason or Bartlett? Second,

[Hughs *v.* Pickering.]

if so, was the possession sufficient in law to give title to the land in dispute?

We think the case is against the defendant upon both points.

If Mason is correct that the original entry was made by him, his parol gift to his sister, unaccompanied by any act of hers in taking possession, would confer no title upon her, and she would have nothing to sell to Hughs. If, upon the other hand, the right was in Bartlett, upon his death it descended to his heirs, and a sale by the widow would give no right to the purchaser. Hence, at the time Hughs took possession, in August, 1826, he had no valid claim to any interest that might have been previously acquired.

But even if this were otherwise, the possession of Mason or Bartlett was worthless for the purpose of giving title by the statute of limitations.

There is no pretence that either entered under any color of title, that any survey was made or any land actually cleared, enclosed, or cultivated. They were simply trespassers for a period of two or three months, from May to July, 1825, and then the tract was left for upwards of a year, without any thing done upon it evidencing an intention to follow up the original entry.    *    *    *

Again, although Mason testifies that he claimed all the land within the interference, (which is the part in dispute,) there is nothing to show that he ever exercised any act of ownership over any portion of the tract except where he commenced clearing. His claim never was made known by declarations or otherwise as to its extent. It was not returned in the fall of 1825, either by himself or Mrs. Bartlett, for taxation. In a word, it was that kind of claim or possession that, if continued for a period of twenty-one years, would only have been protected to the extent of the land actually enclosed or cultivated.

He instructed the jury that their verdict must be for the plaintiff.

Verdict for plaintiff.

Error was assigned to the charge, in stating that if Mason made the entry, his parol gift to his sister conferred no title upon her. 2. That if the right was in Bartlett, it descended to his heirs, and that Hughs had no valid claim to any interest acquired *before he took possession*. 3. In deciding, as a matter of law, that the possession of Mason or Bartlett was worthless for the purpose of giving title by the statute of limitations. 4. That the court erred in taking the case from the jury, and deciding it as a question of law, when the whole evidence shows that it was a question of fact which could only be resolved by the jury. 5. In telling the jury that there was no disputed facts in the case.

*B. F. Lucas,* for plaintiff in error.—It was contended on the

[Hughs *v.* Pickering.]

trial, that Mason and Bartlett were tenants in common, and that Mason gave to his sister a parol authority to sell; and though it may not have been sufficient to pass a title legal or equitable, yet under the case of Cunningham *v.* Patton, 6 *Barr* 355, it was sufficient to pass the *possession*. That they were *trespassers* is not important.

J. G. *Gordon*, and Judge *White*, for defendants. — Plaintiff showed a legal title. Defendants claimed by possession, and, to maintain it, must show a title by *continuous* possession. That Mrs. Bartlett never had possession, and therefore had nothing to sell; that possession in her was a link which was wanting to connect Hughs with Mason, who made the first improvement: 3 *Barr* 214, Bishop *v.* Lee. Mason made no cultivation. That the statute of frauds applies to all transfers of land.

The opinion of the court was delivered by

Rogers, J.—The plaintiff exhibits in evidence a perfect legal title to the premises in controversy. This is admitted, but the defendant relies on the act of limitations. The suit was instituted the 19th March, 1847; the title under which the defendant claims commenced in May, 1825, so that more than twenty-one years elapsed from the commencement of the title until the institution of the suit.

To acquire a right by the act of limitations requires a possession of twenty-one years, actual, visible, *continued*, notorious, distinct, and hostile. The plaintiff contends he is not barred because the possession was not a continued possession; but that the possession was interrupted in its transmission from Mason, the first intruder, to Hughs the defendant. On this point the cause mainly turns. Mason proves that he made the first improvement in May, 1825; that he deadened trees in May, grubbed six acres in June, chopped logs and saplings on four acres, burnt brush, chopped logs in July, and that he had a shanty on the place, about ten by twelve feet square. That, being about to leave the property, he told his sister, the widow of Israel Bartlett, that she might take his right and sell it, and if she could get any thing for it, well and good. Whether we consider this transaction as a parol sale, or gift, or an authority to sell, is, perhaps, of but little consequence. But that it was the latter, in the estimation of the parties, at least, would appear from their subsequent conduct; for, after selling to Hughs, who took possession in pursuance of the contract, she paid over to her brother one-half of the purchase money. Coupling this with the words used, it indicates rather a power of sale than a gift or sale to her. But be that as it may, is the agreement between Mrs. Bartlett and Hughs, subsequently ratified by Mason receiving half the purchase money, possession taken in pursuance of it, to be viewed as a sepa-

[Hughs *v.* Pickering.]

rate, distinct trespass, or is it a continuation of the original trespass? In other words, has Hughs the right to tack Mason's possession, for which he paid value, to his own, so as to bar plaintiff's right? Had Mason abandoned the property absolutely, or had Hughs taken possession without authority, these would present such a case of a want of continuity as would be fatal to the defence. But does this appear? These are points which the jury must decide: 4 *Watts* 409, Simpson *v.* McBeth; 5 *Watts* 441, Fish *v.* Brown. In Cunningham *v.* Patton, 6 *Barr* 355, it is ruled, that when adverse possession is proved by parol testimony only, it is a question for the jury whether it is continuous. Indeed, when there is a spark of evidence, a question of fact must be submitted to the jury as the legitimate triers of it: Bank of Pittsburgh *v.* Whitehead et al., 10 *Watts* 397. The facts which particularly bear on this point are these: Under authority derived from Mason, Mrs. Bartlett sells to Hughs; Mason receives one-half of the purchase money, and, under this contract, Hughs enters, and ever since has been in the actual possession of the land. That Hughs was a trespasser as to the plaintiff, may be admitted; but was he a trespasser as to either Mason or Mrs. Bartlett, who sold their right in the property, whatever it was, and received the purchase money? Under such a state of facts, it is clear that no action of trespass could be sustained by either of them. The court would seem to be under the impression that unless Mason was in the actual possession at the time of the contract, the law would not unite the possession to the title; that the continuity of possession which the law requires cannot be preserved, unless there is actual, continued possession of the premises. So I understand the court, and, if so, the point is ruled in direct opposition to Sailor *v.* Hertzog, 4 *Whar.* 272. In that case it was insisted the continuity of possession was destroyed by the interruption of the actual possession; that the premises had been vacant about the year 1815, an important period in the title, bearing directly on the defence under the statute. But the judge who tried the cause at Nisi Prius, afterwards affirmed by the Supreme Court, says, "That in order to destroy the continuity of possession, the vacancy must not be merely occasional, such as occurs in every case where a party, from some cause, unable to obtain a tenant, shuts up his property for a short, or, indeed, for a long time. When the possession is *abandoned* for *any* time, or when a person takes possession of the property in dispute, or is totally unconnected with the previous holder, it prevents the operation of the act, because the continuity of possession, which is essential to a title under the act of limitation, is broken. It is a principle of law, it is true, that when the possession is vacant, the law casts the possession on the legal owner. But the question is, what is such a vacancy of possession as produces this effect? And we have seen that the vacancy must be not

2 A

merely occasional, but the title of the subsequent holder must be unconnected with the title of the previous holder.   There must be a want of privity of contract, for when the subsequent holder enters with the assent and permission of the previous holder, the former has the right to tack one possession to another.   That actual possession is not required, is also shown in Porter *v.* McGinnis, 1 *Barr* 413.

But, granting that the defence is good in part, the next inquiry will be, to what extent has the defendant a right to take defence. And this will mainly depend on the testimony of Mason; for, if the jury believe that Mason designated his boundaries by the lines of the surrounding surveys, then, as is ruled in Porter *v.* McGinnis, 1 *Barr* 416, the defendant has title to all the land contained in those boundaries.  But, if otherwise, he can only claim the part he actually enclosed and improved.

Judgment reversed.