## Shaffer *v.* Lauria, Appellant.

*Adverse possession—Title to real estate—Tacking ejectment.*

1. An adverse possession begun and continued for a time may be tacked to the adverse possession of a successor, and the two possessions, if continued for the statutory period, may ripen into title; but the adverse possession of the first occupant to be available to his successor must be transferred to such successor in some lawful manner.

2. Where an occupant of a lot claims a right of passageway over a strip of the rear end of an adjoining lot, and establishes such right of way by an equity suit, and thereafter conveys his own lot without reference to the right of way, and the grantee continues to use this strip for some years, but less than the statutory period, and then brings an action of ejectment, claiming an absolute fee in the strip, he cannot tack his predecessor's adverse possession of the right of way to his own adverse possession, so as to establish an estate in fee simple in the strip.

*Ejectment—Evidence—Ex parte affidavit.*

3. In an action of ejectment an ex parte affidavit made in an equity suit between the immediate predecessors in title of the plaintiff and the defendant in the ejectment, is not admissible in evidence, where it appears that the affidavit was made by the mere agent of one of the parties, that the witness had never been submitted to cross-examination as to the matters stated in the affidavit; and that there was nothing to show that the affiant was dead or out of the jurisdiction of the court at the time of the trial of the ejectment.

Argued Oct. 16, 1911. Appeal, No. 194, Oct. T., 1911, by defendants, from judgment of C. P. No. 4, Phila. Co., Dec. T., 1909, No. 4,307, on verdict for plaintiff in case of Louis Shaffer v. Nicholas Lauria et al. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Ejectment for a strip of land in the city of Philadelphia. Before AUDENRIED, J.

The facts are stated in the opinion of the Superior Court.

At the trial the defendant made the following offer:

Mr. Gorman: I offer in evidence the affidavit of James Benton Young, being affidavit filed in support of motion

to dissolve injunction, in C. P. No. 2, June Term, 1883, No. 522. In that case the plaintiff was Michael McCarron and the defendant John H. Gehner, Michael McCarron being the predecessor in title of the plaintiff in this case, and John H. Gehner being the predecessor in title of the defendant.

Mr. Smyth: I object to the offer. Ruling reserved.

Mr. Gorman: I now renew the offer of the affidavit of J. Benton Young, made yesterday, and add to the offer that it is for the purpose of showing adverse possession of the premises in dispute in John Henry Gehner, the predecessor in title to the present defendant.

Objected to. Objection sustained and offer overruled. Exception noted for defendant by direction of the court. [3]

Defendant presented these points:

1. If the jury believe from the evidence that defendants for a period of over twenty-one years last past have been in the exclusive, notorious, open and adverse possession by themselves and their tenants and their predecessors in title to the same to the exclusion of the plaintiff, Louis Shaffer, and his predecessor in title, the verdict should be for the defendant. *Answer:* Refused. [5]

2. If the possession of the defendants with their predecessors in title, viz., Gehner, of the land in dispute was actual, open, continuous, exclusive and hostile for a period of over twenty-one years, the verdict should be for the defendant. *Answer:* Refused. [6]

3. If Gehner (the predecessor in title of defendants and from whom they purchased) was in possession of the land in dispute at the time of the purchase by the defendant Shaffer his title under the statute of limitations had ripened into an absolute title in the fee of the land in controversy against McCarron, his predecessor in title, and the transfer of the land in dispute by McCarron to plaintiff, Shaffer, vested no title in plaintiff to that land, and the verdict should be for defendants. *Answer:* Refused. [7]

4. Under the facts in this case the possession must follow

the deed, and where no possession is given as in the transfer by deed from McCarron to plaintiff, no title vested in plaintiff to the ground in dispute. *Answer:* Refused. [8]

5. If an owner of real estate remains passive while the boundaries of his land are invaded by an adverse claimant who asserted title thereto and therein, he is held to acquiesce, and the adverse claimant being the defendants and their predecessors in this case ripened in a title by possession by virtue of the statute. *Answer:* Refused. [9]

6. It is immaterial whether the possession is held for the entire period of twenty-one years by defendants if the possession was continued from their predecessor and interrupted, when there is privity of estate by occupation and title between the successive holders. *Answer:* Refused. [10]

7. The possession of Genner and complainants with their tenants, like the possession of an ancestor and his heirs, may be tacked one to the other to complete the twenty-one years and the statute will apply and protect such an estate. *Answer:* Refused. [11]

8. If defendants were put in possession by Gehner, former owner, who was himself in possession of the land in dispute, and they entered and actually occupied the land in dispute, and remained in possession and occupying under a claim of title, whether such claim be by deed or otherwise, this constituted a valid, adverse possession by defendants and their predecessors in title the verdict should be for defendants. *Answer:* Refused. [12]

Verdict and judgment for plaintiff. Defendants appealed.

*Errors assigned* among others were (3) ruling on evidence, quoting the bill of exceptions; (4) in giving binding directions for plaintiff; (5–12) above instructions, quoting them.

*William Gorman,* with him *Francis S. Goglia* and *John F. Gorman,* for appellants.—In the present case we had

actual adverse possession by Gehner and his predecessor of a piece of land fenced in as part of our lot for over twenty-one years when Gehner transferred the possession to Lauria who entered, and this adverse possession continued through Cliber, Gehner's tenant, who became Lauria's tenant, for over twenty-one years before suit brought by plaintiff. It is settled that the tenant's possession is the possession of the landlord: Schwab v. Bickel, 11 Pa. Superior Ct. 312.

And therefore the possession of Fidel Klaiber from October, 1887, to November, 1890, as tenant under John Henry Gehner and subsequently under plaintiff, enures to the benefit of the latter; and John Henry Gehner having possession by his tenant delivered it to Lauria when he assigned the leasehold and at the same time delivered these premises over to the plaintiff with the tenant: Parker v. Southwick, 6 Watts, 377; Graffius v. Tottenham, 1 W. & S. 488; Cunningham v. Patton, 6 Pa. 355; Hughs v. Pickering, 14 Pa. 297; Overfield v. Christie, 7 S. & R. 173.

The affidavit of Young was admissible: Wertz v. May, 21 Pa. 274; Numbers v. Shelly, 78 Pa. 426; Viscount Lorton v. Earl of Kingston, 5 Clark & Fin. 269; Courtenay v. Hoskins, 2 Russ. 253; King of Hanover v. Wheatley, 4 Beav. 78; Wanner v. Sisson, 29 N. J. Eq. 141; Doe v. Sybourn, 7 T. R. 2.

*G. Albert Smyth*, for appellee.—The affidavit was inadmissible: Walbridge v. Knipper, 96 Pa. 48; Keim v. Reading, 32 Pa. Superior Ct. 613.

The possession of one trespasser cannot be tacked to the possession of a subsequent trespasser so as to permit the subsequent trespasser to acquire title by adverse possession, unless there is some conveyance by the first trespasser to the subsequent trespasser, or the subsequent trespasser inherits under the first trespasser; that is, it is necessary that their possession be one and the same possession in order to give title: Schrack v. Zubler, 34 Pa. 38; Zubler v. Schrack, 46 Pa. 67; Moore v. Collishaw, 10 Pa.

224; Sawyer v. Kendall, 64 Mass. 241; Wade v. Lindsey, 47 Mass. 407; Colgan v. Pellens, 48 N. J. Law, 27 (2 Atl. Repr. 633); Smith v. Reich, 80 Hun (N. Y.), 287 (30 N. Y. Supp. 167); Berkowitz v. Brown, 3 N. Y. Misc. 1 (23 N. Y. Supp. 792); Doe v. Barnard, 66 E. C. L. 945; Dixon v. Gayfere, 17 Beavan, 421; Ross v. Goodwin, 88 Ala. 390 (6 So. Repr. 682); Lucy v. R. R. Co., 92 Ala. 246 (8 So. Repr. 806); Witt v. Ry. Co., 38 Minn. 122 (35 N. W. Repr. 862).

OPINION BY HEAD, J., April 23, 1912:

On the east side of Sixth street, immediately north of Queen street, in the city of Philadelphia, are three contiguous improved lots, known and numbered respectively 807, 809 and 811. In 1847 this entire property was owned by one William Shaw who died seized thereof. By his will he devised the corner property, No. 811, to his nephew, Thomas B. Shaw and his children, and particularly described it in the following language, to wit: "Being about twenty feet six inches on Sixth street and about forty feet on Queen street, the front and back lines to be the same width parallel with Queen street." In the same will he devised to another nephew the premises immediately north of the corner lot, as well as the then vacant lot still further north. By divers mesne conveyances the title to lot No. 811 has become vested in Lauria, the defendant, while the title to the remaining property adjoining it on the north has in like manner become vested in Shaffer, the plaintiff. In all of these conveyances the respective lots are properly described according to the boundaries mentioned in the will referred to and show no encroachment or overlapping by the one as against the other. As already noted, in the devises from the common ancestor, and in every conveyance since that date, the three lots are described as having the same depth, each extending from Sixth street eastward to the property line of a stranger in the rear. The corner lot, 811, has been continuously assessed in the name of

the present defendant and his predecessors in title, while the remaining two lots have, during the same period, been assessed in the name of the plaintiff and his predecessors. During all of this time the payment of taxes followed the respective assessments.

Many years ago—the exact date not being fixed by the testimony—an outside privy vault and building were constructed on the northeast corner of the entire property as originally owned, to wit, on the northeast corner of lot 807, and the owners and tenants of the corner lot, 811, had access to this structure by a way along and across the rear ends of Nos. 809 and 807. It appears further that at some time a fence was constructed across 807 and part of 809, thus dividing to that extent the narrow way already referred to from the remaining portion of the lot. The brick building on 809 did not extend the full depth of the lot, nor even as far back as the line of the fence last referred to, and thus the open way at the rear of the two lots was irregular in shape, being considerably wider at the south than at the north end.

In February, 1910, the plaintiff began this action of ejectment to recover the possession of the strip of ground already referred to, being the rear end of his two lots. As he was able to show a continuous line of conveyances from the common ancestor in title down to himself, all of which embraced the ground described in the writ, the continuous payment of taxes under assessments which followed the regular recorded title, and that he and those under whom he claimed had been constantly in the possession of at least the greater portion of the property conveyed to him, he undoubtedly made out a prima facie case. The defendant's line of title shows no conveyance to him or any ancestor purporting to vest in any of them any interest whatever in the ground in dispute. He, however, asserts his ownership of the soil and his right to the exclusive possession thereof under the statute of limitations. In other words, not denying in any way the force and effect of the recorded conveyances in both lines of

title, and not setting up any grant which would give to him even color of title, he asserts that the plaintiff has lost his title to the ground in dispute because he and his ancestors suffered the defendant and those who preceded him to use and occupy this strip of ground for a period of more than twenty-one years by possession so open, notorious, adverse and hostile to the recorded title that the owner of the latter may no longer be heard to maintain his claim to the ground.

On the trial it appeared that the present defendant bought the corner lot by a deed dated May 7, 1889, recorded shortly thereafter. It is clear, therefore, that the statutory period had not run before the impetration of the writ in the present action if the possession of the defendant is to be legally computed from the date when he entered under his deed. In order to piece out that possession he must of necessity tack it to an earlier adverse possession by some predecessor in title, and under such circumstances that the law will regard both possessions as continuous. The immediate predecessor in title of the present defendant was one Gehner who acquired his title in 1876. Even if there was room under the testimony, to which we shall in a moment refer, for a finding that any possession by Gehner of the strip in dispute, which was wholly outside the lines of his deed, was so adverse to the real owner as to create what has been called a sprouting title to the strip of land in dispute, it is also clear that he made no attempt to convey any such interest to the present defendant.

In Schrack v. Zubler, 34 Pa. 38, the Supreme Court, by Mr. Justice THOMPSON, said: "No doubt, a succession may be kept up by tacking possessions; but each succeeding occupant must show title under his predecessor, so as to preserve a unity of possession. . . . Zubler could only claim Herring's possession as enuring to his use, by virtue of some conveyance of it, which we have seen he had not. The want of this essential in the continuity of possession, renders unnecessary any further notice of what was said

in regard to the statute of limitations." In Zubler v. Schrack, 46 Pa. 67, the same court in a review of the same case thus reiterated the doctrine declared in the former one from which we have just quoted: "We endeavored to show, what was perhaps a work of supererogation, that an adverse possession begun and continued for a time, in order to be available to a successor, must be transferred to such successor in some lawful manner. This is as true as that property can only be rightfully acquired with the assent of its owner, or vested by operation of law. As therefore an adverse possession of an occupier, although not ripened into a complete title, is a step towards title, and is property, like property it must be transmitted, so as to vest in a successor a right to that which had been gained by such occupation." Unless, however, the defendant has made it clearly appear that the possession of Gehner, his predecessor, was adverse to the real owner, in the sense and to the extent now claimed, there will be no necessity to consider some of the complicated questions, so ably and elaborately argued by counsel, which frequently arise in applying the law of tacked possessions to the facts of a given case. It is to be remembered that the present parties so made up the issue and tried the case that the sole question for determination was the absolute title to the property in dispute. The record now before us does not require us to determine any question as to the existence of an easement in favor of the defendant's property over the strip of ground already referred to, nor as to the extent and character of that easement if one exists. The plaintiff in his declaration or statement avers that the title to the land in dispute is in him and not in the defendants. The latter in their plea and answer aver that the plaintiff has neither any legal nor equitable estate in the strip of ground described, but that they are the legal and equitable owners in fee simple of the same.

What then was the nature of the possession of Gehner as disclosed by the evidence? On the trial the defendants themselves offered in evidence the record of a certain pro-

ceeding in equity in the court of common pleas No. 3 of
Philadelphia county, at No. 525, of September term, 1882,
wherein the said Gehner was plaintiff and one Michael
McCarron the defendant. At the time of the filing of
that bill, Gehner, the predecessor in title of the plaintiff,
was the owner of the corner property and in possession
thereof. In his bill he avers that he was the owner of said
corner lot, describing it in the same way as it was de-
scribed in the devise already quoted from the common
ancestor Shaw. He next avers that McCarron, the de-
fendant in the bill and the immediate predecessor in title
of the plaintiff, was the owner of the adjoining premises
on the north which he then proceeds to describe, and
which he avers extend along the northern line of his own
property eastward to a depth of forty feet more or less,
being the same depth as the corner property, thus ex-
cluding from his own ownership and including in that of
McCarron the strip of ground now in dispute. He then
avers that over the eastern end of McCarron's lot an
alley way extends to the wooden structure already re-
ferred to. He further avers that he, Gehner, and his
predecessor in title, "had been in the sole, exclusive, con-
tinued and adverse possession of the right of way over and
along the said alley with the knowledge of the adjoining
owners and without any molestation or hindrance from
anyone. He then alleges that the defendant in the bill
had given notice of his intention to pull down and remove
the said privy house, fill up the well under the same, and
to obstruct and close up the said alley. His prayer was
for an injunction to restrain the defendant from the
performance of these threatened acts. The record shows
that a preliminary injunction was granted and later
continued until the further order of the court, and that
the proceeding there ended. The injunction thus issued
has never been dissolved, modified or appealed from. In
the face of the distinct averments of this bill, offered in
evidence by the defendant, filed by Gehner while in the
ownership and possession of the property now owned by

the defendant, there is no foundation on which the latter may justly base the conclusion that such possession was adverse to the ownership of the soil by the predecessor in title of the plaintiff. Had the defendant upon the bringing of this action disclaimed any further interest in the strip of ground in dispute, save only the easement claimed by his predecessor in the bill from which we have quoted, the effect of the decree there entered would have been a matter for serious consideration. But when the whole defense in the present case rests upon an alleged title in fee by the operation of the statute, and when the evidence conclusively shows that the defendant himself has not held adverse possession for twenty-one years and that no such possession was claimed by his predecessor in title, the defense fails and there remained nothing for the learned trial court to do except to direct a verdict in favor of the plaintiff, the undisputed holder of the legal. written, recorded title to the premises.

There remains one other question earnestly urged upon us by the able counsel for the appellants. On the trial the defendants further offered in evidence the record of another equity proceeding to No. 522 of June term, 1882, in the court of common pleas, No. 2 of Philadelphia county. In that case the parties were the same as in the one already noted although their positions were reversed. McCarron there sought an injunction to restrain some alleged threatened invasion of his property by Gehner. Ex parte affidavits were filed by plaintiff and defendant in support of their respective motions to continue and dissolve the preliminary injunction. The record shows that the injunction was dissolved and the proceeding thus ended. One of the affidavits there filed was by one Young who had been the bailiff or agent for Gehner in charge of his property. On the present trial the defendants offered in evidence that ex parte affidavit and the learned trial court rejected it. How could it be admissible as evidence in the trial of this action? Not on the ground that it was the testimony of a former witness because, as stated, it

was nothing but an ex parte affidavit. It did not appear that the affiant was dead or out of the jurisdiction. Neither the present plaintiff who was to be affected by this affidavit, if admitted, nor any predecessor in title had ever had an opportunity to cross-examine the affiant on the matters detailed at great length by him in the affidavit. Under such circumstances we know of neither statute, general rule of evidence or judicial decision that would permit the introduction of such an affidavit as testimony in the trial of this cause. The learned trial judge was therefore right in rejecting it. The assignments of error are overruled.

Judgment affirmed.