595 A.2d 606

**H. Parker GLENN**

v.

**Ronald L. SHUEY and Holly F. Shuey, Appellants.**

Superior Court of Pennsylvania.

Submitted April 1, 1991.

Filed July 31, 1991.

Dennis O. Reiter, Bellefonte, for appellants.

Louis T. Glantz, State College, for appellee.

Before CIRILLO, MONTEMURO and HESTER, JJ.

CIRILLO, Judge:

Ronald and Holly Shuey ("the Shueys")[1] appeal from the judgment entered in the Court of Common Pleas of Centre County following appellee H. Parker Glenn's action in ejectment. We affirm.

This appeal arises from a dispute concerning the boundary between two parcels of real estate situated in Howard Township, Centre County. *See* appendix. Both parcels ("parcel A" and "parcel B") were at one time owned by Ronald Curtin. On January 18, 1833, Curtin conveyed what eventually became the Shueys' property, parcel B, to Michael Leyman by a deed recorded in Centre County deed book K, page 397. On March 25, 1842, Curtin conveyed parcel A to John Leathers by a deed recorded in Centre County deed book N, page 422.

The Shueys are owners of parcel B by virtue of a deed dated July 12, 1967, and recorded July 13, 1967 in Centre County deed book 294, page 596. Glenn's sources of title in parcel A are two deeds, one recorded July 5, 1957 in deed book 238, page 389, by which he became the owner of one-half interest, and the other recorded in deed book 247, page 257 on June 18, 1959, which vested title to the remaining one-half interest.

During 1987, a survey of parcel B was performed by Fred Henry on behalf of the Shueys. Subsequent to Henry's survey, Glenn employed Kerry H. Uhler and Associates for the purpose of surveying parcel A. The Uhler survey located the boundary line between parcels A and B as

---

1. Subsequent to the initiation of this action, the Shueys separated.

passing within a few feet west of the Shueys' home. In contrast, the Henry survey located that line as passing 25 feet west of the line as determined by the Uhler survey. *See* appendix, disputed tract.

Until the completion of the Henry Survey in May, 1987, the Shueys' use of the disputed tract was limited to a twelve-foot wide gravel driveway passing along the western edge of the Shueys' home and ending at the rear of the Shueys' porch. The driveway extends from the rear of the Shuey home to the township road. Subsequent to the Henry survey, the Shueys placed a rope barrier along the line which they claimed to be the proper boundary between their property and that of Glenn. The Shueys also placed a large propane tank in the disputed tract at the southern end of the driveway. Prior to the placement of the barrier, the entire disputed tract, with the exception of the gravel driveway, was used exclusively by Glenn. Glenn's use of the disputed area included, 1) mowing the grass strip between the gravel driveway and the property line as claimed by Glenn, 2) the maintenance of various shrubs, grapevines and berry bushes in the disputed tract south of the end of the driveway, and 3) mowing and/or cutting grass in the disputed tract including cutting hay for livestock.

Glenn commenced an action in ejectment in the Court of Common Pleas of Centre County, alleging that the Shueys' actions deprived him of a portion of property to which he possessed legal title by virtue of deeds dated October 30, 1956 and June 18, 1959. Glenn's complaint also averred that he and his predecessors in title were in open, visible and notorious possession of the disputed area since January 30, 1923, for a period of over 65 years.

In their answer and new matter, the Shueys disputed the accuracy of the Uhler survey and alleged that all of their activity, including the erection of the rope barrier, transpired upon their own property as depicted by the Henry survey. The Shueys claimed ownership of the disputed property by virtue of their deed. Alternatively, the Shueys averred that they and their predecessors in title had used

and maintained the driveway running along the western edge of the Shuey home for a period in excess of 21 years. Similarly, the Shueys maintained that they and their predecessors were in open, visible and notorious possession of the driveway and the entire parcel as depicted by the Henry survey for a period in excess of 21 years. Consequently, the Shueys claimed legal title to the disputed area by virtue of adverse possession.

The case proceeded to a non-jury trial, the Honorable David E. Grine presiding. In his first opinion and order, filed July 25, 1989, Judge Grine determined that the Uhler survey correctly determined the boundary between parcel A and parcel B.[2] Consequently, the court held that the line between the properties passed within a few feet west of the Shueys' home and therefore Glenn possessed legal title to the majority of the gravel driveway. In addition to establishing title by survey to within a few feet of the Shueys' home, the court opined that Glenn established title to the western edge of the Shueys' driveway by adverse possession as he exercised exclusive, visible and notorious control over the tract for a period of 21 years.

The trial court further held that because the Shueys had occupied their own property for a period of 20 years and 11 months as of the time of Glenn's ejectment action, they failed to establish ownership rights in the disputed tract by adverse possession. The court rejected the Shueys' allegation that they established the requisite 21 year period for acquiring title by adverse possession by tacking on their

2. Judge Grine based this finding on what he perceived to be a deficiency in the Henry survey. The surveyors for both parties testified that older monuments are preferable in preparing accurate surveys. The trial court stated that the Uhler survey referred to a relatively old chestnut tree line, and all its boundaries were consistent with that line. In contrast, the court noted, the Henry survey, although recognizing the chestnut tree line, failed to reconcile it with the boundary between the parties' properties. Rather, the Henry survey relied upon an iron pin which had been placed in the ground within five years prior to the trial, and, by Henry's own admission, was located at least five to six feet northeast of its proper location.

predecessor's possession of the disputed tract.[3]

The trial court reasoned that the Shueys could not satisfy the requirements of section 72 by tacking because: 1) no relationship existed between the Shueys and their predecessor; 2) the predecessor had not claimed title to the disputed property; and 3) the deed conveying title to the Shueys made no reference to the disputed tract.

The Shueys' motion for post-trial relief was denied, and the trial court entered an opinion and order on September 26, 1989. On September 28, 1989, counsel for the Shueys sent Judge Grine a letter requesting that the court reconsider its order denying post-trial relief. Subsequently, on October 10, 1989, the court filed an amended opinion and order denying the Shueys' motion for post-trial relief.[4]

3. The foundation for title by adverse possession in this Commonwealth is Act of March 26, 1785, 2 Sm.L. 299, § 2, 12 P.S. § 72 (repealed) which provided:

§ 72. No entry or right of entry of action allowed after twenty-one years.
From henceforth no person or persons whatsoever shall make entry into any manors, lands, tenements or hereditaments, after the expiration of twenty-one years next after his, her or their right or title to the same first descended or accrued; nor shall any person or persons whatsoever have or maintain any writ or right, or any other real or possessory writ or action, for any manor, lands, tenements or hereditaments, of the seisin or possession of him, her or themselves, his, her or their ancestors or predecessors, nor declare or allege any other seisin or possession of him, her or themselves, his, her or their ancestors or predecessors, than within twenty-one years next before such writ, action or suit, so hereafter to be sued, commenced or brought.

12 P.S. § 72.
Section 72 has been recodified in Title 42 as follows:
§ 5530. Twenty-one year limitation.
(a) General Rule.—The following actions and proceedings must be commenced within 21 years:
(1) An action for the possession of real property.

\* \* \* \* \* \*

42 Pa.C.S. § 5530.

4. Glenn contends that the trial court's order of September 26, 1989 was final, and consequently, the time period for filing an appeal began to run on that date. According to Glenn, the Shueys' letter of September 28, 1989 did not have the effect of extending the time within which they were required to file their notice of appeal. Conse-

The Shueys present the following issues for our consider-ation:

1) Did appellants [the Shueys] establish ownership of a driveway adjacent to their home by adverse possession?

2) Can appellants [the Shueys] tack their period of adverse possession and use of the driveway onto periods of adverse possession and use of the same by their predecessors in title?

Since the Shueys' issues are intertwined, we combine them for purposes of discussion.

At the outset, we note that "the factual findings of a trial court sitting without a jury carry the same weight as a jury verdict, and we will not disturb those findings on appeal absent an error of law or abuse of discretion." *Arcadia Co., Inc. v. Peles*, 395 Pa.Super. 203, 207–208, 576 A.2d 1114, 1116 (1990) (citing *Pato v. Cernuska*, 342 Pa.Super. 609, 612, 493 A.2d 758, 759 (1985)); *see also Bingham v.*

quently, Glenn argues, the Shueys' appeal, filed November 9, 1989, is untimely. *See* Pa.R.A.P. 903(a). We disagree.

While the orders of September 26, 1989, and October 10, 1989 denied the Shueys' motion for post-trial relief, neither order entered judgment in favor of Glenn or directed the prothonotary to do so. *See* Pa.R.C.P. 227.4. The appellate rules make it clear that an appealable order is one entered on the trial court docket following the disposition of post-trial motions. *See* Pennsylvania Rule of Appellate Procedure 301(c), (d). Similarly, Pennsylvania Rule of Civil Procedure 227.4, which applies to actions at law and in equity, tried with or without a jury, provides:

.... [T]he prothonotary shall, upon praecipe of a party:

\* \* \* \* \* \*

(2) enter judgment when a court grants or denies relief but does not itself enter judgment or order the prothonotary to do so.
Pa.R.C.P. 227.4

Here, as stated above, neither of the trial court's orders entered judgment or directed the prothonotary to do so. Glenn filed his praecipe on November 2, 1989, requesting that the order of October 10, 1989 be entered as a final decree and judgment. Since the trial court apparently did not enter the order as a final judgment, this court ordered the trial court to do so by a *per curiam* order dated April 26, 1991. Judgment was entered May 20, 1991. Consequently, the notice of appeal previously filed November 9, 1989, will be treated as filed after the entry of judgment. *See* Pa.R.A.P. 905(a). Hence, the Shueys have not waived their appellate rights.

*Wenschhof,* 295 Pa.Super. 146, 148, 441 A.2d 391, 392 (1982).

It is well settled that a party claiming title to real property by adverse possession must affirmatively prove that he or she had "actual, continuous, exclusive, visible, notorious, distinct, and hostile possession of the land for twenty-one years." *Conneaut Lake Park, Inc. v. Klingensmith,* 362 Pa. 592, 594–95, 66 A.2d 828, 829 (1949) (citing *Parks v. Pennsylvania R.R. Co.,* 301 Pa. 475, 152 A. 682 (1930)); *see also Klos v. Molenda,* 355 Pa.Super. 399, 513 A.2d 490 (1986); *Tioga Coal Co. v. Supermarkets General Corp.,* 289 Pa.Super. 344, 433 A.2d 483 (1981), *alloc. denied,* 500 Pa. 555, 458 A.2d 1355 (1983). Each of these elements must exist, otherwise the possession will not confer title. *Conneaut Lake,* 362 Pa. at 594–595, 66 A.2d at 829. "An adverse possessor must intend to hold the land for himself, and that intention must be made manifest by his acts ... He must keep his flag flying and present a hostile front to all adverse pretensions." *Klos,* 355 Pa.Super. at 402, 513 A.2d at 492 (citations and quotations omitted).

Broadly speaking, "actual possession" of land is dominion over the land; it is not equivalent to occupancy. *Reed v. Wolyniec,* 323 Pa.Super. 550, 471 A.2d 80 (1983); *Burns v. Mitchell,* 252 Pa.Super. 257, 381 A.2d 487 (1977) (en banc) (plaintiff who had occupied defendant's land and maintained lawn up to fence for more than 21 years established title by adverse possession); C.J.S., Adverse Possession §§ 30, 42. There is no fixed rule, however, by which the actual possession of real property by an adverse claimant may be determined in all cases. 3 Am Jur.2d § 18, at 109. The determination of what constitutes actual possession of property for purposes of adverse possession depends on the facts of each case, and to a large extent on the character of the premises. *Id.*[5]

**5.** There may be actual possession of real property under an infinite variety of circumstances. For example, actual possession may be established in connection with a residence, *Klos v. Molenda,* 355 Pa.Super. 399, 513 A.2d 490 (1986) (adverse possessors continuously

■ The words "visible and notorious possession," as applied to the adverse holding of land by a party without color of title, mean that the claim of ownership must by evidenced by conduct sufficient to place a reasonable person on notice that his or her land is being held by the claimant as his own. *Sterner v. Freed,* 391 Pa.Super. 254, 570 A.2d 1079 (1990) (plaintiff's use of defendant's driveway notorious for 26 year period and therefore sufficient to establish prescriptive easement); 3 Am Jur.2d § 69, at 165–166.

■ To constitute distinct and exclusive possession for purposes of establishing title to real property by adverse possession, the claimant's possession need not be absolutely exclusive. *Reed, supra.* Rather, it need only be a type of possession which would characterize an owner's use. For example, in *Reed,* the appellees, Robert and Audrey Reed,

maintained strip of lawn in connection with their residence), by virtue of the claimant's cultivation of the land, *M'Caffrey v. Fisher,* 4 Watts & Serg. 181, 182 (1842) (intruder acquired title to portion of property by cultivating property for a period of 21 years); *Schoen v. VanHart,* 29 Pa.D. & C.3d 616 (1983) (possessor, who, although occupying parcel of property without title, acquired parcel by adverse possession where he cultivated specific variety of trees for 21 years and enclosed the subject parcel); *Heacock v. Rawn,* 93 Montg. 239, 240 (1970) (cultivation of unimproved land constitutes "actual possession" of property); 3 Am.Jur.2d §§ 30–33, at 119–122, by inclosure of lands, *Robin v. Brown,* 308 Pa. 123, 162 A. 161 (1932) (dictum) (enclosure of property by fence can be sufficient to establish title to property by adverse possession but only if fence is continuously and substantially maintained for 21 years so that it constitutes an assertion "against the world" of claimant'sDownership); *Schoen, supra,* or by making improvements on the property and paying the property taxes. *McCall v. Neely,* 3 Watts 69 (1834) (party who, without color of title, entered land, cleared trees, made improvements and paid taxes on entire tract for 21 years vested title to the tract in himself). *Cf. Criswell v. Altemus,* 7 Watts 565, 579–580 (1838) (trial court erred in instructing jury that defendant could not establish an ouster of plaintiff from property where defendant showed that he entered plaintiff's land without color of title, claimed the land as his own, erected buildings, cultivated the land and paid the property taxes for more than 21 years); *see also* 3 Am.Jur.2d § 34 (pasturing or grazing of lands sufficient to constitute possession necessary for establishing title by adverse possession); *Id.* at § 35 (cutting of timber sufficient to establish dominion over property); *Id.* at § 38 (adverse possession evidenced by combination of using land for grazing, cultivation, gathering natural crops and removal of timber).

asserted title by adverse possession to a lot adjacent to their residence. The Reeds had maintained the lot by cutting the lawn and by planting and maintaining thereon various shrubbery and flowering plants. In affirming the trial court's determination that the Reeds had established title to the lot by adverse possession, Judge Wieand, writing for a unanimous court, opined:

> Thus, the exclusive character of appellees' [the Reeds] possession was not destroyed because other persons occasionally passed unobserved over the lot. It was enough that appellees' possession was to the general exclusion of others and that they remonstrated with persons who attempted, without permission, to use the land.

*Reed*, 323 Pa.Super. at 556, 471 A.2d at 84 (citation omitted); *see also Pistner Bros., Inc. v. Agheli*, 359 Pa.Super. 177, 518 A.2d 838 (1986) (subdivision lot owner's action in planting grass on abutting, undedicated street held insufficient to establish interference with use of street for purposes of adverse possession where others able to use street for its intended purpose); *Lyons v. Andrews*, 226 Pa.Super. 351, 313 A.2d 313 (1973).

The word "hostile," as an element of adverse possession does not mean "ill will" or "hostility," but implies an assertion of ownership rights adverse to that of the true owner and all others. *Schlagel v. Lombardi*, 337 Pa.Super. 83, 486 A.2d 491 (1984) (citing *Vlachos v. Witherow*, 383 Pa. 174, 118 A.2d 174 (1955)); *see also Jones v. Porter*, 3 P. & W. 132 (1831) (party who attempted to establish adverse possession was not required to show that he had entered land and held it in direct hostility to other claimants). Simply stated, the possession must be "such as to import a denial of the owner's title." 3 Am.Jur.2d § 50, at 143–144. *Cf. Gee v. CBS, Inc.*, 471 F.Supp. 600, 655–658 (E.D.Pa.), *aff'd*, 612 F.2d 572 (3d Cir.1979) (in context of suit by recording artist against record company to recover property rights in recording, requirement of hostility for adverse possession meant that record owner of song did not consent to claimant's possession). Furthermore, if all of the ele-

ments of adverse possession other than hostility are established, the element of hostility is implied. *Schlagel, supra.*

Finally, in order for adverse possession to ripen into title, it is necessary to show that such possession has been continuous and uninterrupted for the full statutory period. *Tioga Coal, supra; Elias v. Scott,* 164 Pa.Super. 329, 64 A.2d 508 (1949). In this Commonwealth, as in most jurisdictions, the statutory period is twenty-one years. *See* 42 Pa.C.S. § 5530(a)(1), *supra* note 3; *Conneaut Lake, supra; Klos, supra.* The law does not require that the claimant remain continuously on the land and perform acts of ownership from day to day. *See Reed, supra* (single twenty-four hour attempt by record owner to interrupt claimant's possession did not destroy continuity of adverse possession). A temporary break or interruption, not of unreasonable duration, does not destroy the continuity of the adverse claimant's possession. *Id.*

Here, the trial court focused primarily on the Shueys' failure to show that they exercised dominion over the driveway for the statutory period of 21 years. In arguing that they acquired title to the driveway by adverse possession, the Shueys allege that the trial court erred in concluding that they could not tack the period of adverse possession of their predecessors onto their own possession. The Shueys do not dispute the trial court's factual determination that Glenn commenced his action in ejectment on June 25, 1988, twenty years and eleven months after the occupancy of parcel B by the Shueys. Since it appears that the Shueys must show that they were entitled to tack the adverse possession of the previous occupants to their own possession in order to establish title to the driveway, we turn our attention to prior cases in which tacking was at issue.

In *Wittig v. Carlacci,* 370 Pa.Super. 584, 537 A.2d 29 (1988), a panel of this court reviewed the principles of law applicable when a party attempts to tack the adverse

possession of his or her predecessor onto his or her own time of possession:

> The possession of successive occupants may be tacked, but only where there is privity between them.... For our purposes, "privity" refers to a succession of relationship to the same thing, whether created by deed or other acts or by operation of law.... But a deed does not itself create privity between the grantor and the grantee as to land not described in the deed but occupied by the grantor in connection therewith, although the grantee enters into possession of the land not described and uses it in connection with that conveyed * * * The deed, in itself, creates no privity as to land outside its calls. Nor is privity created by the bare taking of possession of land previously occupied by the grantor.

*Id.*, 370 Pa.Superior Ct. at 589, 537 A.2d at 31–32 (citations omitted) (quoting *Castronuovo v. Sordoni*, 357 Pa.Super. 187, 193–94, 515 A.2d 927, 930–31 (1986)); *see also Stark v. Lardin*, 133 Pa.Super. 96, 1 A.2d 784 (1938) (where grantor intended to convey land which he held by adverse possession, description in deed was defective and grantor delivered possession of land to grantees, sufficient privity of possession existed between grantor and grantees so as to warrant tacking of grantees' occupation of disputed land with that of grantor; grantor testified to his possession of disputed land and that he intended to convey it to grantees, and actual delivery of possession of disputed land coincided with defective deed). The *Wittig* court noted: "Each predecessor must have claimed title to the property in dispute, and in transferring to his successors must have purported to include it." *Wittig*, 370 Pa.Super. at 589–590, 537 A.2d at 32 (citations omitted); *see also Inn Le'Daerda, Inc. v. Davis*, 241 Pa.Super. 150, 360 A.2d 209 (1976) (where appellees' deeds purported to include disputed parcel of property, each appellee was permitted to tack his possession to that of his predecessors in title in order to establish requisite 21 years for adverse possession). Thus, a grantee cannot tack his grantor's adverse possession of land when the grantor does not convey such land to him. *Wittig, supra; Shaffer*

_v. Lauria_, 50 Pa.Super. 135 (1912).[6]

In _Plott v. Cole_, 377 Pa.Super. 585, 547 A.2d 1216 (1988), this court addressed the issue of tacking once again. There, Mrs. Plott acquired title to a property known as 157 Ann Street by a deed that described the property as being separated from 155 Ann Street, the adjoining property, by a partition wall. The deed provided for an easement in favor of the owners of 155 Ann Street to use the eastern half of the double stairway located on the western side of the partition wall to travel to and from the second floor of 155 Ann Street. The deed to 155 Ann Street corresponded, describing the easement over the eastern half of the double stairway in the rear of 157 Ann Street along the western side of the partition wall for ingress and egress to the second floor of 155 Ann Street. The deed dated 1982, conveying the premises at 155 Ann Street, also contained the easement language. Following a sheriff's sale, the deed conveying the property at 155 Ann Street to the Administrator of Veterans Affairs referred to the previous conveyance and to the place of record in the record book. In October, 1983 the Administrator of Veterans Affairs permitted Raymond Cole to take possession of 155 Ann Street.

**6.** We recognize that in the middle of the nineteenth century, Chief Justice Gibson, in _Scheetz v. Fitzwater_, 5 Pa. 126 (1847), held that a purchaser of record title to certain land may acquire his grantor's possession of land not described in the conveyance, and thereby tack his grantor's possession to his own. _Id._ at 132.

Subsequent cases, however, contain contrary language, and in 1941 this court held that acceptance of a deed containing boundary lines confines the premises to the area within the boundaries so that the grantee could not tack his grantor's possession of lands not described in the deed. _Masters v. Local Union No. 472, United Mine Workers_, 146 Pa.Super. 143, 145, 22 A.2d 70, 71–72 (1941). In _Gerhart v. Hilsenbeck_, 164 Pa.Super. 85, 63 A.2d 124 (1949), this court, relying on _Masters_, held that a deed could not convey the grantor's rights, by adverse possession in land outside the description, but recognized an exception in cases such as _Scheetz_, where "an intent to convey more than the described premises may be inferred from the circumstances, and perhaps from the deed itself." _Gerhart_, 164 Pa.Super. at 89–90, 63 A.2d at 126–127.

During the 1950's a screening wall had been erected along the western side of the double stairway for privacy purposes. In 1986, Cole installed a toilet in the area under the double stairway. In response, Plott filed an action in ejectment against Cole, alleging that she and the other inhabitants of her home had been subjected to foul odors, noise, insects and rodents as a result of the installation of the toilet. The trial court found the screening wall to be the boundary line between the parties.

On appeal, this court reversed, noting that there was no conflict between the courses and distances in the deeds and the actual location of the partition wall on the eastern side of the stairway as described in the deeds. *Plott*, 377 Pa.Super. at 590, 547 A.2d at 1219.[7] This court analyzed Cole's argument that the construction of the screening wall created a new boundary between the properties by the establishment of a consentable line by acquiescence or through adverse possession. *Plott*, 377 Pa.Super. at 591–592, 547 A.2d at 1220–1221.[8] Because Cole had only been in possession of 155 Ann Street since 1983, the finding of a consentable line depended greatly upon the actions of his predecessors in interest and whether he could tack their possession of the disputed property to his own in order to meet the statutory period. *Id.*, 377 Pa.Superior Ct. at 594, 547 A.2d at 1221.

The *Plott* court noted that none of Cole's predecessors asserted ownership rights over the disputed property. Similarly, the court noted that none of Cole's predecessors in title intended to convey more than what was set forth in

7. This court noted that the language in the deeds clearly indicated that the stairway west of the partition wall was part of 157 Ann Street, with an easement for use of the stairway in favor of 155 Ann Street. *Plott*, 377 Pa.Super. at 591, 547 A.2d at 1219.

8. The court summarized the doctrine of consentable line by acquiescence as follows:

If adjoining landowners occupy their respective premises up to a certain line which they mutually recognize and acquiesce in for the period of time prescribed by the statute of limitations, they are precluded from claiming that the boundary thus recognized and acquiesced in is not the true one.

*Id.*, 377 Pa.Superior Ct. at 593, 547 A.2d at 1221 (citations omitted).

their respective deeds. *Id.*, 377 Pa.Superior Ct. at 596–597, 547 A.2d at 1222. The court further stated:

> Privity is not created by the bare taking of possession of land previously occupied by the grantor ... which is what Mr. Cole has done here ...

*Id.*, 377 Pa.Superior Ct. at 597, 547 A.2d at 1222–1223 (citations omitted). The *Plott* court thus concluded that there was no privity between Cole and his predecessors so as to preserve unity of possession. *Id.*

Here, the trial court held that the failure of the Shueys to show that their immediate predecessor in title claimed the disputed tract was evidenced by the testimony of Ken Bitner. Bitner testified that he lived in his parents' home, now the Shueys' home, for approximately ten years beginning in 1954.[9] When asked who lived in the Shuey house after he moved out but before the Shueys moved in, Bitner stated that Joseph Leathers lived there. The Shueys argue that their immediate predecessors in title are John A. and Tracie M. Barnhart who leased the premises to Leathers.

The record indicates that the Barnharts, rather than Ken Bitner, were the Shueys' *immediate* predecessors in title to parcel B. The Shueys acquired title to parcel B from the Barnharts by a deed recorded July 13, 1967 in Centre County deed book 294, page 596. Similarly, the deposition testimony of Joseph C. Leathers refutes the trial court's apparent conclusion that Bitner is the Shueys' immediate predecessor in title to parcel B. Leathers testified as follows:

> Q: So you lived in that house through the 40s, 50s and so forth, or?
>
> A: [Leathers] Yes. When I moved out of the house across the street, I moved in the house that Holly Shuey

---

**9.** Bitner indicated that it was always his view that Glenn owned half of the driveway. Bitner also noted that his father asked Glenn for permission to erect scaffolding on the driveway for the purpose of constructing a flue. On cross-examination, Bitner stated that to his knowledge, Glenn neither drove nor parked his vehicles upon the gravel driveway. Bitner also stated that his family, rather than Glenn, removed the snow from the driveway during the winter months.

lives in now and I don't have my dates quite exact.... but I know I was in there before 1964 and I was in there after 1964. Now I was there for probably, in the neighborhood of 4 to 5 years.

Q: Did you rent that property?

A: *Yeah, I rented that off of Barnhart.*

\* \* \* \* \* \*

Q: *Do you remember when you moved out? Is that when Holly Shuey moved in?*

A: *Yeah.* She moved ... I ... Correct me there. I moved out and she moved in shortly after, now I think the house sat empty a few months before she moved in. *I would say I moved out probably right around in '66 [sic] if I remember correctly.*

\* \* \* \* \* \*

(emphasis added).

Leathers testified that he and his family parked cars in the driveway, and he noted that the driveway was the only means of access to the coal chute at the back corner of the house. Leathers further noted that Glenn never used the driveway because there was a garage situated directly on the driveway approximately 40 feet behind the Shueys' house.

In their appellate brief, the Shueys argue that Leathers' testimony clearly establishes that their predecessors in title claimed title to the driveway. While Leathers' testimony demonstrates continuous use of the driveway, it is unclear whether he occupied the Shuey home during June, 1967, the month preceding the Shueys' acquisition of parcel B. Leathers noted that he believed that the Shuey home may have been empty for a few months before Holly Shuey moved in and that he probably moved out sometime in 1966. Hence, our determination of whether there exists sufficient privity between the Shueys and their immediate predecessors is contingent upon whether John and Tracie Barnhart

asserted ownership rights over the gravel driveway. *Plott, supra; Wittig, supra.*

In *Plott,* there was no privity between Cole and his predecessors because none of Cole's predecessors asserted ownership to the disputed property nor did they express an intention to convey anything more than what was set forth in their respective deeds. *Plott,* 377 Pa.Super. at 596, 547 A.2d at 1222. Likewise, in the instant case, the Barnharts' deed makes no mention of the disputed tract, and the record offers no indication that they intended to convey the gravel driveway to the Shueys. *Id.; Stark, supra.* The Shueys have not shown privity by the bare taking of the possession of the driveway which was previously occupied by Leathers until some undetermined date. *Plott, supra; Wittig,* 370 Pa.Super. at 589, 537 A.2d at 31–32 ("... nor is privity created by the bare taking of possession of land previously occupied by the grantor."). The Shueys note that by statute in this Commonwealth all appurtenances, unless specifically excepted in a deed, are passed to the next owner. *See* 21 P.S. § 3. The Shueys rely upon a nineteenth century case, *Scheetz, supra,* in support of their conclusion that the deed by which they acquired title to parcel B did not necessarily have to include a description of the driveway. In *Scheetz* our supreme court opined that a mill-pond held under a base fee, no longer used in conjunction with a mill and occupied adversely as arable land, passed under a conveyance of the mill with its appurtenances. *Scheetz,* 5 Pa. at 132.

Here, the Shueys have made no showing that they possessed the driveway in a manner adverse to Glenn. Unlike the party claiming adverse possession of the filled in mill-pond in *Scheetz,* the Shueys have failed to demonstrate that the driveway was an appurtenance belonging to parcel B. To the contrary, a review of the record indicates that the Shueys and their predecessors may have used the gravel driveway with Glenn's permission. *Compare Ste-*

*venson v. Williams*, 188 Pa.Super. 49, 145 A.2d 734 (1958) (en banc) (evidence insufficient to establish prescriptive easement rights in appellees' use of driveway where their use of the driveway and their predecessors' use began and continued as a result of friendly and accommodating permission by appellants) *with Waltimyer v. Smith*, 383 Pa.Super. 291, 556 A.2d 912 (1989) (title owner of portion of driveway located on border of abutting property failed to demonstrate that abutting landowner's use of common driveway was permissive); *see also Garret v. Jackson*, 20 Pa. 331 (1853); *Walley v. Iraca*, 360 Pa.Super. 436, 520 A.2d 886 (1987); *Adshead v. Sprung*, 248 Pa.Super. 253, 375 A.2d 83 (1977) (en banc). For example, prior to the Shueys' separation, Glenn ordered the removal of an antenna which had been placed on the Glenn side of the driveway. Glenn indicated that Ron Shuey complied with his request. Glenn also noted that he directed a bulldozer operator to utilize the driveway in 1962 to gain access to the rear of his property for the purpose of digging out a cesspool. He also stated that he used the driveway at various times for heavy hauling. Hence, it does not appear that the Shueys or their predecessors in title kept their respective "flags flying" in an attempt to prevent Glenn from utilizing the gravel driveway. *Klos*, 355 Pa.Super. at 402, 513 A.2d at 492.

Although not expressly stated in his opinion of July 25, 1989, it appears that Judge Grine characterized the Shueys' use of the driveway as "permissive." *Stevenson, supra.* We agree with his determination that the testimony adduced during the trial not only supports Glenn's ejectment action but also defeats any claim by the Shueys against the entire disputed tract. *Conneaut Lake, supra; Klos, supra. Cf. Miles v. Pennsylvania Coal Co.*, 245 Pa. 94, 91 A. 211 (1914) (line created must be recognized and acquiesced in as boundary by adjoining landowners).

The Shueys also rely on *Hughs v. Pickering*, 14 Pa. 297 (1850), for the proposition that when a subsequent

holder enters property with the permission of the previous holder, the former has the right to tack one possession to another. In *Hughs*, the plaintiff, John Pickering, brought an action in ejectment to recover possession of a tract of land which he owned but which was occupied by Hughs. Hughs had acquired the property from Mrs. Bartlett for the sum of approximately $5.00. Subsequently, Bartlett gave half of this sum to George Mason, her brother. At trial, Mason testified that he had chopped logs, saplings and brush on the disputed property in addition to erecting a ten by twelve foot shanty on the property. The issue in *Hughs* was whether Hughs had the right to tack Mason's possession of the tract to his own in order to satisfy the 21 year requirement for establishing title by adverse possession. Our supreme court held that Pickering was not entitled to oust Hughs from the portion of the tract which had been improved by Mason, as Hughs had established title to the property by adverse possession. *Id.* at 302. The court opined that it was not necessary that Mason actually possess the disputed tract at the time of the sale in order to preserve the continuity of possession between Hughs and Mason. Writing for the unanimous court, Justice Rogers observed:

> Had Mason abandoned the property absolutely, or *had Hughs taken possession without authority*, these would present such a case of want of continuity as would be fatal to the defence [Hughs' defense].

*Hughs*, 14 Pa. at 301 (emphasis added). That Hughs paid consideration for and took possession of the disputed tract pursuant to an agreement of sale were critical factors in the court's analysis.

Here, in contrast, it does not appear that the Shueys were authorized to use the driveway by anyone other than Glenn. Hence, *Hughs* does not support the Shueys' claim that they had established privity between themselves and their predecessors in title to parcel B. Consequently, the Shueys may

not tack the adverse possession of their predecessors onto their use of the gravel driveway. *Plott, supra; Wittig, supra.* The Shueys have therefore failed to show that they had "actual, continuous, exclusive, visible, notorious, distinct and hostile possession" of the gravel driveway for twenty-one years. *Conneaut Lake,* 362 Pa. at 594, 66 A.2d at 829–30. We find no error of law or abuse of discretion. *Arcadia, supra; Bingham, supra.*

Judgment affirmed.

## APPENDIX