## McClelland v. Cragle

*David E. Henderson,* for plaintiffs.
*Larry J. Puntureri,* for defendant.

PRATT, *J.,* April 23, 1992—On January 11, 1991, Lucy Ann McClelland and the McConnells; Frederick H. and Sharon Eyvonne, filed a complaint against the Cragles; Eugene, Esther and David. That complaint brought an action in trespass seeking ejectment and damages. The plaintiffs asserted title to the land and sought to eject the Cragles from a parcel of land where the Cragles had erected (and re-erected) a garage, resided upon and otherwise used the land for their own purposes. The Cragles filed an answer to the complaint on February

15, 1991, asserting their own chain of title in defense. Accompanying that answer was new matter whereby the Cragles brought a counterclaim of adverse possession under color of title.

At the non-jury trial occurring on November 13, 1991, both sides attempted to assert the superiority of their chain of title and put the parcel in question within the metes and bounds of real property they received through their chain of title.

Irrespective of the merits of those arguments, what does appear to this court to be dispositive was the counterclaim of adverse possession under color of title. Adverse possession is a method of acquiring title to real property by possession for a period of time as defined and authorized by statute. *Lowery v. Garfield County,* 122 Mont. 571, 208 P.2d 478 (1949). Conversely put, possessors of land are protected from ejection, as other defendants are protected by a statute of limitations. In Pennsylvania, the statute of limitations for possession of real property setting the foundation for adverse possession is set forth in 42 Pa.C.S. §5530(a)(1). That section reads, "(a) *General Rule*—The following actions and proceedings must be commenced within 21 years. (1) An action for the possession of real property." Actions to quiet title under the shield of 42 Pa.C.S. §5530(a)(1) become actions for adverse possession.

As a means of acquiring ownership, title by adverse possession supersedes and defeats other forms of ownership including express, recorded legal title. *Crooks v. McMichael,* 230 Pa. 39, 79 A. 156 (1911); *Kron v. Daugherty,* 9 Pa. Super. 163 (1898); *Jones v. Hughes,* 2 Mon. 590, 5 Montg. 42, 16 A. 849 (1898).

Although the counterclaim based on adverse possession is made in the name of all the defendants, such a claim of adverse possession (on the part of all defendants) and the facts asserted by the defendants are fundamentally inconsistent. By a deed of April 3, 1990, defendants Eugene and Esther Cragle conveyed their interests in the property to defendant David Cragle. This transfer was acknowledged by all testifying defendants. Similarly the testimony of Eugene Cragle conceded that Eugene and Esther Cragle decamped from the premises ceding their possessory rights to David Cragle. By deeding their interests to David Cragle, Eugene and Esther Cragle obviously relinquished all interests in the property to David Cragle. Notwithstanding the fact that this is fundamental to the case and yet was not addressed by either counsel in pleading or at trial, the court has no choice but to conclude that only defendant David Cragle can and has attempted to assert a claim by adverse possession. The inclusion of the other defendants (Eugene and Esther Cragle) in the counterclaim and the failure to object to their inclusion must, the court concludes, have been mere oversights.

Turning now to the claim by adverse possession itself, for adverse possession to lie, the claimant's possession must be actual, continuous, exclusive, visible, notorious, distinct and hostile for the prescriptive period of 21 years. 1 P.L.E. Adverse Possession §11. The plaintiffs accede that all the necessary elements for adverse possession are present in defendants' counterclaim save one; that element which the plaintiffs contend is absent is hostile possession. Notwithstanding this apparent limitation upon the theater of conflict, the court will

later engage in a limited discussion of the other elements of adverse possession, but first we will turn to the more pressing question of hostile possession.

In order for a purported possession to be an adverse possession, it must be hostile from the time of origin until the end of the statutorily required 21-year period. *Moreland v. Moreland,* 121 Pa. 573, 22 W.N.C. 401, 15 A. 655 (1888). It is the plaintiffs' position that because they did not know before 1976 that they owned the land, they did not oppose its occupation and use by the defendants, and as the plaintiffs did not make opposition, possession by the defendants could not have been hostile until 1976. Hostile possession beginning in 1976 would leave the defendants approximately six years short of the statutorily required 21-year period required for ownership by adverse possession.

What the plaintiffs contend is not the state of the law. Actual hostilities are not what is required, only possession by a claimant intended to hold title against all the world. *Vlachos v. Witherow,* 383 Pa. 174, 118 A.2d 174 (1955) adopting the opinion reported at 3 D.&C.2d 698 (1955); *Schlagel v. Lombardi,* 337 Pa. Super. 83, 486 A.2d 491 (1984); *Ewing v. Dauphin County Tax Claim Bureau,* 31 Pa. Commw. 285, 375 A.2d 1373 (1977). It has even been said (regarding the law of Pennsylvania on adverse possession) that hostility "means simply that the true owner has not [in fact] consented to the possession." *Gee v. C.B.S. Inc.,* 471 F. Supp. 600, 655 (E.D. Pa. 1979), *aff'd.,* 612 F.2d 572.

In any event, as long as the claimant holds title adversely to the true record title holder, it does not matter

that the claimant is not unfriendly because he believed at that time that he himself was the true owner. *Lyons v. Andrews,* 226 Pa. Super. 351, 313 A.2d 313 (1973). So in reversing a holding that possession by a supposed buyer was not "hostile" as against a supposed seller because both mistakenly believed that title had been in fact conveyed to said buyer, our Superior Court said:

"Thus it appears that the lower court held that since Mr. Schlagel was under the impression that he had 'purchased' the disputed trust from Mr. Baumgart, he did not hold the land 'adversely' to Mr. Baumgart. We interpret this language to mean that the lower court felt that possession was not 'hostile.' In other words, since Mr. Schlagel was under the mistaken belief that he owned the land (mistaken because an oral agreement for the sale of land is not valid), he did not hold the land with a hostile intent to exclude Mr. Baumgart, the true owner. Because we feel that the lower court incorrectly interpreted the 'hostile' intent element of adverse possession, we reverse and remand." *Schlagel v. Lombardi, supra,* at 87-88, A.2d 495.

Open and notorious possession is sufficient to alert an owner as to the need to protect his rights and (in the absence of actual permission to use by the true owner) itself amounts to hostile possession. *Burns v. Mitchell,* 252 Pa. Super. 257, 381 A.2d 487 (1977).

It is true that other jurisdictions identify "hostile intent" with the common law tort of disseisin by requiring the claimant to hold and demonstrate a specific intent to oust one known to be the true owner, but Pennsylvania follows the majority view where the animus of the claimant is immaterial. *Lyons v. Andrews,*

*supra.* By that majority view, the court looks only to the objective facts of possession to determine if the possession is sufficiently notorious to be hostile, as a truly notorious possession itself places a reasonable owner on notice that his land is claimed by another. *Glen v. Shuey,* 407 Pa. Super. 213, 595 A.2d 606 (1991). Thus even though the parties may be laboring under a mutual mistake concerning ownership, an open, notorious exclusive possession is a hostile possession. *Id.*

Furthermore, not requiring actual resistance and struggle between the claimant and true owner is tantamount to declaring that where the other elements necessary for adverse possession are present, hostility will be presumed. *Tioga Coal v. Supermarkets General Corporation,* 519 Pa. 66, 546 A.2d 1 (1988). *Sutton v. Miller,* 405 Pa. Super. 213, 592 A.2d 83 (1991). Those other elements required are that the adverse possession be actual, continuous, exclusive, visible, notorious and distinct for 21 years. *Glenn v. Shuey, supra.* The testimony here leaves no question that the defendants' possession was actual, visible, notorious and distinct. Next we will turn to a discussion of the other elements as they pertain to this case.

As far as it lasting for 21 years, David Cragle possessed the property for 15 years. Before that the property was controlled for at least seven or eight years by his parents, Eugene and Esther Cragle. If a predecessor claimed title to the property and purported to transfer it to his successor, the possessions may be tacked together to fulfill the duration requirements of adverse possession. *Wittig v. Carlacci,* 370 Pa. Super. 584, 537 A.2d 29 (1988); *Inn Le'Daerda Inc. v. Davis,*

241 Pa. Super. 150, 360 A.2d 209 (1976). Here the property now claimed by David Cragle was claimed before him by his predecessors (Eugene and Esther Cragle) who ceded possession to him long ago and title to him by deed dated April 3, 1990. For periods to be so tacked together, possession must be continuous. *Smith v. Peterman*, 263 Pa. Super. 155, 397 A.2d 793 (1978); *Inn Le'Daerda v. Davis, supra.* Sub judice the possessions between the claimants was unquestionably continuous with only one conceivable exception.

The only possible break in the Cragles' continuity of possession in the 21 years previous to this action occurred circa 1980 when a fire destroyed Eugene and Esther Cragle's house and caused them to live away from the premises for several months. A temporary interruption does not destroy the continuity of an adverse claimant's possession as long as the interruption is not of an unreasonable duration. *Glenn v. Shuey, supra.* The interruption occurring in this case not being unreasonable under the circumstances, there exists no break in the continuous possession.

As to the exclusivity of the possession, it need only be that exclusivity which would normally characterize an owner's use. *Reed v. Wolyniec,* 323 Pa. Super. 550, 471 A.2d 80 (1983); *Lyons v. Andrews, supra.* The only prospective shadows which could possibly loom upon the exclusivity of defendants' combined possessions arose because the Cragles allowed relatives to park on the property, allowed relatives to pump water from the property and allowed visitors to come upon the property. All of these uses were permissive by the Cragles and none of them are inconsistent with acts characterizing ownership. Barring relatives from

parking (in open space) or visitors from visiting would only be considered unfriendly and unneighborly, so allowing same would not be inconsistent with ownership. As to allowing relatives to pump water from the property, this is a water rich state, so permitting its use by relatives cannot be considered so extreme as to be inconsistent with ownership.

On the contrary, these specifics strengthen rather than weaken David Cragle's claim. This is so because these "uses" by his friends and relatives are not inconsistent with the exercise of his claim, but they are inconsistent with the plaintiffs' ownership as these were not their friends or relatives. Therefore, these instances add credence to the supposition that David Cragle's possession was open, notorious and hostile.

Now having found exclusivity of possession, all the elements necessary for a claim of adverse possession have been found to exist in favor of defendant David Cragle. As explained above, any holdings sustaining the counterclaim precludes an award for the plaintiffs on their original claim. Likewise, as to the inter se rights of the defendants, any holding sustaining the counterclaim on behalf of any one defendant also abrogates the necessity of adjudication upon the denials found in defendants' answer. With no purpose served by a discussion of plaintiffs' complaint or defendants' answer thereto, we will not waste the court's resources by engaging in a consideration thereof. The other defendants, having conveyed their title of record to David Cragle and having abandoned their claim by adverse possession in favor of David Cragle, now have no claim on the property whatsoever.

Therefore, this court will, without further deliberation, enter a verdict and award in favor of David Cragle upon his counterclaim, against the other defendants upon that same counterclaim and against the plaintiffs on their original claim. Said verdict and award follow immediately attached herewith.


## VERDICT AND ORDER OF COURT


Following a non-jury trial of the plaintiffs' complaint in ejectment and trespass and the defendants' counterclaim based on adverse possession, the court enters verdicts as follows:

(1) As to the complaint filed January 11, 1991, by the plaintiffs, Lucy Ann McClelland and Frederick H. and Sharon McConnell, the court enters a verdict for the defendants and against the plaintiffs.

(2) As to the counterclaim filed February 15, 1991, by the defendants, Eugene, Esther and David Cragle, the court enters a verdict for the plaintiffs and against defendants Eugene and Esther Cragle.

(3) As pertaining to David Cragle and the counterclaim filed February 15, 1991, the court enters a verdict for David Cragle and against the plaintiffs.

Wherefore, all right, title and interest of the parcel of real property at issue in this case now rest solely in defendant David Cragle.